H. T. BELL v. W. F. HOWERTON et al.

*Principal—Surety—Jurisdiction of Justices of the Peace—
Equitable Defenses—" Splitting Actions."*

1. One who has become surety for the performance of a contract has the
   duty imposed upon him of seeing that the contract is performed,
   and he cannot require the creditor to assume any obligation which
   he has incurred.

2. While a creditor is not bound to exercise diligence to enforce the col-
   lection of a demand upon which he has surety, he has no right to
   release any other security which he has acquired, and which
   might be available in satisfaction of the debt, and if he does so it
   will discharge the surety.

3. A landlord instituted in the Court of a Justice of the Peace two sepa-
   rate actions, each for the recovery of a bale of cotton to which he
   claimed title under a contract with his tenant, and which he
   alleged had been wrongfully converted: *Held*, That this was not
   such a splitting of causes of action as would authorize a dismissal
   of the suits.

4. Although the Courts of Justices of the Peace cannot affirmatively
   administer equity, they have jurisdiction of equitable matters set
   up by way of defense in actions properly cognizable before them.

CIVIL ACTION, tried on an appeal from the Court of a
Justice of the Peace, at Spring Term, 1892, of EDGECOMBE
Superior Court, *Brown, J*, presiding.

The plaintiff appealed.

The case is stated in the opinion.

*Mr. G. M. T. Fountain*, for plaintiff.
*Mr. Jacob Battle*, for defendant.

SHEPHERD, J : The defendant Howerton was the tenant
of the plaintiff, and executed to him a bond for the payment
of rent, with the defendant Braswell as surety. The plain-
tiff, in November, 1888, by virtue of his lien as landlord,

sued for the possession of two bales of cotton grown on the leased premises, and the same having been seized under claim and delivery proceedings, were, upon the execution of the usual undertaking, surrendered to Alexander Greene, a defendant in said suit, who claimed the same under an agricultural lien executed to him by the tenant. The sureties to the undertaking, as well as the said Greene, were perfectly solvent; but the plaintiff, instead of prosecuting his action, submitted to a nonsuit at the Spring Term, 1891, of the Superior Court of Nash County, and now brings this action before a Justice of the Peace on the bond above mentioned·

The foregoing facts appear in the answer of the defendant surety Braswell; and the plaintiff, having demurred to the same, the only questions presented are whether the said facts constitute a defense by way of discharging the surety, and whether such a defense can be entertained in the Court of a Justice of the Peace.

Except when required by written notice under *The Code.* (section 2097), it is not the legal duty of the principal to institute a suit against the debtor, or to pursue such a suit with diligence and to call to his aid all of the remedies provided by the law. If he has brought suit, he is not compelled to prosecute the same to judgment; or if he has recovered judgment, he may fail or refuse to sue out execution; and, indeed, if execution has been issued, he may cause it to be returned without a levy. All this may be done, although judgment, execution and levy would have resulted in the collection of, the debt against the principal debtor, and still the surety will not be discharged. *Pipkin* v. *Bond*, 5 Ired., Eq., 91; *Kesler* v. *Linker*, 82 N. C., 456; Baylies on Sureties, 219.

The principle of the foregoing conclusions is that the duty of performing the contract, or seeing that it is performed, is on the surety, and that he cannot require the creditor to assume any part of a burden which he has made his own. But while the creditor need not take active measures to

enforce the payment of the debt, and may therefore discontinue those which he has instituted, he has no right to relinquish any hold that has actually been acquired and which might have been made effectual as a means of payment. It has accordingly been held that "if the creditor takes the goods of the principal debtor in execution, and afterwards withdraws that execution, he discharges his surety *pro tanto. Mayhew* v. *Crickett,* 2 Swann, 191. So, in *Law* v. *East India Co.,* 4 Ves., 829, it was, says Judge GASTON (in *Cooper* v. *Wilcox,* 2 D. & B. Eq., 90), "considered as incontestible that where a creditor has a fund of a principal debtor sufficient for the payment of the debt and gives it back to the debtor, the surety can never after be called upon. The creditor, by virtue of the seizure in execution, or of the deposit, becomes a trustee of the security so acquired, or of the fund for the benefit of all concerned, and is responsible to any party injured by unfaithfulness in the execution of that trust. For it is a rule that if he be not only creditor, but trustee, then even his neglect, if it occasion the loss of that to the benefit of which the surety is entitled, will *pro tanto* discharge the surety. *Capel* v. *Butler,* 2 Sim. & Stew., 457." The learned Judge further remarks that, "in justice he (the creditor) must be regarded as having *interfered* (the italics are his) with the collection of the debt at his peril, and not at the risk of those who neither consented to the course pursued nor were consulted respecting it." *Nelson* v. *Williams,* 2 D. & B. Eq., 118; *Smith* v. *McLeod,* 3 Ired. Eq., 390; *Pipkin* v. *Bond, supra;* Brant on Suretyship, 381. "It is difficult (says Mr. Brandt, *supra*) to perceive why the release of an attachment lien on the property of the principal should not have the same effect as the release of any other specific lien upon the property of the principal acquired by the creditor after the surety becomes bond;" and in this he is supported by abundant authority. *City of Maquoketa* v. *Willy,* 35 Iowa, 333; *Bank* v. *Watson,* 24 Mo., 333; *Ashby* v. *Smith,* 9 Leigh,

162; *Rees* v. *Barrington*, and notes; White & Tudor's L. C. The same principle necessarily applies to a case like the present, where the creditor actually seized the property upon which he had an undoubted lien, and then voluntarily released the undertaking, given for the return thereof, by submitting to a nonsuit of his action. By his *interference* he constituted himself a *trustee*, and he should be held responsible for the loss or impairment of the security resulting from his neglect or unfaithfulness. The surety had a right to assume that the plaintiff, as such trustee, would not surrender the undertaking given in lieu of the property, and thus practically destroy the subject-matter of the lien. In *Pipkin* v. *Bond*, *supra*, it is said that "while the creditor is not bound to diligence, he is bound not to increase the risk of the surety by any act of his; and if he does anything that has that effect, he can no longer look to the surety." By the action of the plaintiff in seizing the property, the surety was lulled into inactivity for two or three years, the subject of the lien converted, and the undertaking for the return thereof released. Thus the surety, if now required to pay the plaintiff, is stripped of all remedy except an action for the conversion of the property. Under these circumstances, it cannot be seriously contended that his security has not been impaired or his risk increased by the act of the plaintiff; and it would seem more in accordance with natural justice, as well as the firmly established principles of equity, that he who by his own conduct has sacrificed the security, should alone be required to pursue the remaining and more doubtful remedy.

We see nothing in the case which justified the taking of the nonsuit. It is true that separate actions were brought for each bale of cotton before different Justices. These were afterwards consolidated in the Superior Court, where they were pending by way of appeal. The case of *Jarrett* v. *Self*, 90 N. C., 478, cited by counsel, relates to the "splitting up" of the items of a single contract for the purpose of conferring

jurisdiction upon Justices of the Peace, and is not in point, as these actions were not brought upon the contract for the recovery of the indebtedness, but for the possession of distinct pieces of property which had been tortiously taken. There are no circumstances tending to show any fraud upon the jurisdiction, and which, on that ground, would have authorized the dismissal of the actions.

It is further insisted that, conceding the conduct of the plantiff operated as a release of the surety, the defense, being of an equitab'e nature, cannot be set up in the Court of a Justice of the Peace.

In *Cooper* v. *Wilcox, supra,* in speaking of such a defense, the Court said : " The principle is spoken of as one of equity, but it prevails in all courts where the relation of principal and surety can be recognized.   *   *   *   But the form of the security frequently puts it out of the power of any but a court of equity to apply the principle;" as in the case of a bond where all the obligors appear to be principals. There can be no question but that under our present system a party to a bond may show, in a Justice's Court, that he executed the same as a surety. *Capell* v. *Long,* 84 N. C., 17; *Goodman* v. *Litaker, Ibid,* 8. This being so, the case of *Cooper* v. *Wilcox,* is decisive of the jurisdiction of the Justice as to the defense in this action. Indeed, it has been expressly decided that " whenever such a Court has jurisdiction of the principal matter of an action, as on a bond for instance, it must necessarily have jurisdiction of every incidental question necessary to its proper determination. *Garrett* v. *Shaw,* 3 Ired., 395. And though it cannot affirmatively administer an equity, it may so far recognize it as to admit it to be set up as a defense. *McAdoo* v. *Callum,* 86 N. C., 419."

In *Howerton* v. *Sprague,* 64 N C., 451, cited by plaintiff, the question now before us was not directly presented, and the remarks of the Court as to jurisdiction cannot prevail over the reason as well as the express authority of the later decisions.                                    Affirmed.