COMMERCIAL CASUALTY INSURANCE COMPANY v. DURHAM COUNTY.

(Filed 24 June, 1925.)

**1. Principal and Surety—Contracts—Bonds.**

A surety on a building contractor's bond has a substantial right in the equity created by a provision reserving a part of the contract price until completion.

**2. Same—Equity—Payments.**

The owner has an equity in the reserved balance provided for in a building contract, but has no right to waive surety's rights therein.

**3. Same—Written Contracts.**

The written contract fixes the right and determines the liability of a surety.

**4. Same.**

Contracts are strictly construed as to sureties to the end that their liability must be found within the terms thereof.

**5. Same—Checks Unpaid.**

Unpaid checks themselves do not constitute payments.

APPEAL by defendant from *Calvert, J.,* at February Term, 1925, of DURHAM.

Controversy without action submitted by Commercial Casualty Insurance Company and Durham County on account of a matter in difference in a settlement between Durham County, owner, and Commercial Casualty Insurance Company, surety on a building contractor's bond. Judgment for plaintiff. Defendant appealed. Affirmed.

The following facts appear:

The plaintiff, doing a bonding business, executed with Walter Clark, contractor, a bond in the sum of $100,000 for the faithful performance of a contract to build the Durham County Home, on the part of the contractor, and to satisfy all claims and demands incurred for the same; to fully indemnify and save harmless the owner from all cost and damages which it might suffer by reason of his failure to do so. Walter Clark made default in the performance of said contract and abandoned the work thereon 30 October, 1924. Defendant notified plaintiff of the default and that defendant would expect plaintiff to complete the building according to plans and specifications included in the contract.

It was also agreed that "the contract . . . provided that payments to the contractor should be made upon the certificate of the architect of the defendant and that all payments to the contractor were so made. It is also admitted that the contractor was paid the sum of

$27,076.76 in excess of the amount which he was entitled to receive by terms of the contract prior to the date of his default hereinbefore referred to, to which is to be added any unpaid claims for labor and material in or on the job."

Plaintiff agreed to complete the building in accordance with the plans and specifications, but reserved its right to have its liability with reference to the excess payments to the contractor determined. This amount of excess payments is again stated thus: "$27,076.76 and labor and material claims unpaid, which amount it is agreed has been over-paid to said Walter Clark on said contract."

It was further admitted on 15 October, 1924, that the architect approved an estimate rendered him by Walter Clark and directed that a voucher for $15,827 be issued to said Walter Clark by defendant; this voucher was so issued, but before approving the estimate the architect required Clark to issue and mail checks to certain creditors, for labor and material, who had known claims against said contractor. Such checks were issued on the Murchison National Bank of Wilmington, duly presented, but not paid, because said bank had condemned the deposit of Clark and applied it to the payment of notes due said bank by Clark.

The following appears in the contract between Walter Clark and the defendant:

"The architect's status:

"The architect shall have general supervision and direction of the work. He is the agent of the owner only to the extent provided in the contract documents and when in special instances he is authorized by the owner to act, and in such instances he shall upon request show the contractor written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract. As the architect is, in the first instance, the interpreter of the conditions of the contract and the judge of its performance, he shall side neither with the owner nor the contractor, but shall use his powers under the contract to enforce its faithful performance by both.

"Certificates and Payments:

"If the contractor has made application as above, the architect shall, not later than the date when each payment falls due, issue to the contractor a certificate for such amount as he decides to be properly due. No certificates issued nor payment made to the contractor, nor partial or entire use or occupancy of the work by the owner, shall be an acceptance of any work or materials not in accordance with this contract. The making and acceptance of the final payment shall constitute a

waiver of all claims by the owner, otherwise than under articles 16 and 28 of these conditions or under requirements of the specifications, and of all claims by the contractor, except those previously made and still unsettled. Should the owner fail to pay the sum named in any certificate of the architect or in any award by the arbitrators upon demand when due, the contractor shall receive, in addition to the sum named in the certificate, interest thereon at the legal rate in force at the place of building.

"Payments Withheld:

"The architect may withhold or, on account of subsequently discovered evidence, nullify the whole or a part of any certificate for payment to such extent as may be necessary to protect the owner from loss on account of:

"(a) Defective work not remedied.

"(b) Claims filed or reasonable evidence indicating probable filing of claims.

"(c) A reasonable doubt that the contract can be completed for the balance then unpaid.

"(d) Damage to another contractor under article 38. When all the above grounds are removed, certificates shall at once be issued for amounts withheld because of them."

By virtue of the building contract, Clark, the contractor, was to provide all material and perform all work shown on drawings or in specifications.

The court rendered the following judgment:

"Now, therefore, upon the facts stated, the court is of the opinion and so adjudged that the Commercial Casualty Insurance Company is, and the same is hereby, relieved from liability on account of its bond to the amount of $27,076.76, and the amount of unpaid bills that were due on the job at the time of the abandonment of the contract by the contractor, Walter Clark, which amount of unpaid claims for labor and material includes the checks issued by the contractor and unpaid by the Murchison National Bank."

The defendant's exception to the judgment is the only question presented.

*B. H. Bratney, S. Brown Shepherd, and Fuller & Fuller for plaintiff. Brogden, Reade & Bryant, and J. S. Manning for defendant.*

VARSER, J. The contract provision that 85 per cent of the value of labor and material used during the previous month, as estimated by the architect, shall be paid by the owner to the contractor at the dates

specified during the progress of the work creates in the 15 per cent reserve balance an equity in which the surety has a substantial right. While the owner also has an equity in this reserved balance, he has no right, without the consent of the surety to waive it, or to exceed the provisions of the contract in making payments to the contractor. The retained balance is well calculated to induce the contractor to complete the building, and it is valuable security against loss when a breach occurs. Clark defaulted 30 October, 1924. The excess payments were made 15 October, 1924.

The contract as written, and not otherwise, fixes the rights and determines the liability of the surety. Sureties have a right to stand on the terms of their contract, and, having consented to be bound to the extent expressed therein, their liability must be found therein and strictly construed. *Glenn County v. Jones* (Cal.), 80 Pac. Rep., 695; *Morgan v. Salmon,* (N. M.), 135 Pac. Rep., 553; *Calvert v. London Dock Co.,* 2 Keen, 639; *Prairie State Bank v. U. S.,* 164 U. S., 227; *Kunz v. Boll* (Wis.), 121 N. W., 601; *Warehouse Co. v. Green* (Ga.), 87 S. E., 826; *Webb v. Lee* (Wis.), 194 N. W., 155; *Y. M. C. A. v. U. S. Fidelity & Guaranty Co.,* 90 Kans., 332; 133 Pac., 894; 55 L. R. A. (N. S.), 170; *First National Bank v. Fidelity & Deposit Co.,* 5 L. R. A. (N. S.), 418; *Greenville v. Ormand,* 51 S. C., 121; Brandt on Suretyship and Guaranty, 578; Stearnes on Suretyship, 108; *Kimball v. Baker,* 62 Wis., 526; 9 C. J., 862; 32 Cyc., 223; *Gray v. Putnam* (S. C.), 28 S. E., 148; *Fidelity Deposit Co. v. Agnew,* 152 Fed., 956; *Miller v. Stewart,* 22 U. S., 680.

Our own authorities proceed upon this principle. *Cooper v. Wilcox,* 22 N. C., 90; *Bell v. Howerton,* 111 N. C., 69; *Purvis v. Carstaphan,* 73 N. C., 575; *Carriage Co. v. Dowd,* 155 N. C., 307; *Mfg. Co. v. Holladay,* 178 N. C., 417.

The defendant contends that these excess payments to Clark constitute an alteration in the terms of the contract, and that the plaintiff, therefore, is not relieved. The record discloses no alterations in the terms of the contract or in the work to be done under it, as contemplated by the bond.

A violation of the contract is not an alteration. If this were true, no violation could occur when the contract provided as in the instant case, for the contract would alter itself to meet the breaches. *Blackman v. Morel* (Ga.), 79 S. E., 492. *Guttenberg v. Vassel,* 74 N. J. L., 553, is not in conflict, but in affirmance of the rule herein declared. The sureties in that case were held liable on account of a provision in the contract that payments to the contractor, "in advance or contrary to the terms of the contract," would not render the contract void and would not relieve the surety.

The instant case is between the surety and the owner, and the material men and laborers are not parties. Hence, it is unnecessary and improper to determine their rights. The checks which were not paid do not constitute payments. *Graham v. Warehouse,* 189 N. C., 533; 30 Cyc., 1265; 21 R. C. L., 60.

We are advertent to authorities that seem to hold to the contrary. Upon an examination, many of these are upon different facts, or openly accept a different view; in some instances this is in obedience to legislative enactments. We prefer to follow those authorities which uphold the right to contract and to abide by the terms thereof when made. Parties may then act in accordance therewith and in full appreciation of such rights and liabilities as are fixed by their agreements.

Therefore, let the judgment appealed from be

Affirmed.