SALEM REALTY COMPANY, INC. v. W. K. BATSON, TRADING AS W. K. BATSON COMPANY, AND EQUITABLE FIRE AND MARINE INSURANCE COMPANY.

(Filed 2 February 1962.)

**1. Evidence § 9—**

The burden of proving an affirmative defense rests upon defendant.

**2. Trial § 27—**

Nonsuit upon an affirmative defense may not be allowed unless plaintiff's own evidence establishes such defense.

**3. Contracts § 21; Principal and Surety § 9—**

The fact that a contractor performs the contract for the construction of water, sanitary and storm sewer lines in accordance with the specifications and grades designated by the contractee's engineers does not

REALTY CO. *v.* BATSON.

estop the contractee from recovering against the contractor and the surety on its bond for defective conditions in the underground work caused by faulty construction and workmanship, nor is the contractor or surety entitled to nonsuit on the ground that the contractee's inspector could have discovered the defects in the exercise of due diligence when the ability of the inspector to have thus discovered such defects is not established by plaintiff's evidence, or otherwise.

**4. Same—**

The fact that the contractee accepts the work in the honest but mistaken belief that the contractor had satisfactorily performed his contract and advised the surety that the work had been satisfactorily completed, does not estop the contractee from asserting claim for damages for a latent defect in workmanship and construction.

**5. Principal and Surety § 9—**

The bond and the construction contract it is given to secure will be construed together.

**6. Same—**

The obligation of a surety is primary, and he is equally bound with the principal.

**7. Contracts § 12—**

The primary purpose in construing a contract is to ascertain the intention of the parties.

**8. Same—**

Ambiguity in a written contract is to be construed against the party who prepared the writing.

**9. Principal and Surety § 9—**

Where a contract for the construction of water, sanitary, and storm sewer lines provides that the work should be done according to the written specifications and in accordance with the standards and workmanship required by the municipality, the surety may be held liable for loss resulting from failure of the work to meet the municipality's requirements because of defects in the construction and workmanship.

**10. Same—**

The failure of the contractee to retain the full amount specified in the contract to be retained from payment to the contractor does not entitle the surety to a credit *pro tanto* when the payments have been made by the contractee under the honest but mistaken belief that the contractor had satisfactorily completed the work, the defects being latent, and the surety's motion for nonsuit on the affirmative defense of such overpayment is properly denied when the contractee's evidence does not establish as a matter of law that it was negligent in failing to discover the defects before accepting the work and paying the contractor without retaining the percentage of the contract price specified.

**11. Same—**

Where the contract for the construction of water, sanitary, and storm

sewer lines for a development stipulates that the work should be done in accordance with the standards prescribed by a specified municipality, a printed pamphlet released by the city and containing its specifications for such construction, is material and properly admitted in evidence, irrespective of whether the contractor and the contractee had examined or read the booklet prior to executing the agreement.

APPEAL by Equitable Fire and Marine Insurance Company from *Crissman, J.*, January 23, 1961 Term of FORSYTH.

Civil action to recover for breach of contract and of bond executed for the faithful performance thereof.

Plans and specifications for a real estate development on plaintiff's property in Winston-Salem were prepared for plaintiff by Mr. Burns, a private engineer, and approved by the proper Winston-Salem authorities. Thereafter, under date of March 19, 1957, defendant Batson entered into a contract with plaintiff for the installation of water and sewer lines in plaintiff's said development. Under date of March 29, 1957, Batson, as principal, and Equitable Fire and Marine Insurance Company (hereinafter called Equitable), as surety, executed and delivered to plaintiff a bond in the amount of $46,536.35, conditioned on Batson's faithful performance of said contract.

The said contract, in which Batson is designated "Contractor" and plaintiff is designated "Owner," provides:

"Section 1. The Contractor agrees to perform all work as described in Section 2 hereof for Project Development — Utilities for Salem Realty Co., Inc. hereinafter called the Owner, at Winston-Salem, North Carolina, in accordance with the General Conditions of the Contract and in accordance with the drawings and the Specifications, approved by the City of Winston-Salem, N. C., hereinafter called the Architect, all of which General Conditions, Drawings and Specifications signed by the parties thereto or identified by the Architect, form a part of a Contract between the Contractor and the Owner, and hereby become a part of this Contract.

"Section 2. The Contractor and the Owner agree that the work to be done by the Contractor is:

"Furnish all labor, equipment and services necessary to complete all water, sanitary and storm sewer lines, as shown on Owner's drawing, and in accordance with the standards and workmanship required by the City of Winston-Salem, N. C. The Owner shall furnish all grades and engineering required for the completion of the work."

Section 3 contains a schedule of unit prices plaintiff agreed to pay

Batson for work installed. It was agreed that plaintiff was to pay for all materials.

"Section 4. The Owner and Contractor agree to be bound by the terms of the Agreement, the General Conditions, Drawings and Specifications as far as applicable to this contract, and also by the following provisions:

"The Contractor agrees:

"(a) To furnish the Owner a performance bond and insurance certificates to cover the work on this contract.

"The Owner agrees:

"(a) To pay the Contractor periodical monthly estimates on work in place to the extent of 90% of the value of said work. Said payments to be made by the 10th of the month following completion of work.

"(b) To pay all retainages and final estimates on the 10th of the month after completion and acceptance of work by the engineers.

"(c) To allow the contractor to approve all material purchases."

Plaintiff alleged that, when inspected by the proper authorities of the City of Winston-Salem, defects in Batson's work were detected; that, although Batson and Equitable were notified thereof, they refused to correct the defective work; and that plaintiff had spent $5,942.69 in correcting certain of said defects and estimated at least $5,000.00 more would be required to complete the correction of all defects.

Plaintiff alleged that, with the exception of $500.00, it had paid Batson the full amount called for by said contract; and that it was entitled to recover actual damages in the amount of $10,942.69 and special damages (resulting from the delay caused by Batson's alleged defective work) of not less than $10,000.00, its recovery to be reduced by said sum of $500.00.

Batson, answering, denied he had breached his contract with plaintiff; and, as a counterclaim, alleged he was entitled to recover from plaintiff said balance of $500.00.

Equitable, answering, denied Batson had breached his contract with plaintiff and alleged the further defenses considered in the opinion.

The court submitted and the jury answered the following issues:

"1. Did the defendant W. K. Batson fail to perform his contract with the plaintiff, as alleged in the Complaint? ANSWER: Yes.

"2. What amount, if any, is the plaintiff entitled to recover from the defendants? ANSWER: $5,000.00.

"3. What amount, if any, is the defendant W. K. Batson entitled to recover on his Counterclaim? ANSWER: $500.00."

After setting forth the verdict, the judgment provides:

"It was stipulated by counsel that the amount, if any, found by the jury to be due the defendant W. K. Batson under the third issue should be subtracted by the Court from the amount, if any, found by the jury to be due the plaintiff under the second issue.

"It was further stipulated by counsel that, without submitting an issue to the jury thereon, the Court should determine as a matter of law, subject to the right of any party to except to the Court's conclusion, what amount, if any, should be subtracted from the jury's answer to the second issue in rendering judgment against the defendant Equitable Fire and Marine Insurance Company on account of the provision in Section 4 of the contract relating to the portion of the contract price to be retained by the plaintiff under the completion and acceptance of the work by the engineers, the undisputed evidence being that the total payments due to the defendant Batson for full performance of the contract were $19,-116.48. The Court concluded, as a matter of law, that the amount to be so subtracted from the answer of the jury to the second issue is 10% of the total payments to be made under the contract, which, including the said $500.00 retained by the plaintiff amounts to $1,911.65.

"IT IS THEREFORE ORDERED AND ADJUDGED:

"(1) That the plaintiff have and recover of the defendant W. K. Batson the sum of $4,500.00 with interest thereon at six per cent per annum from the date of this judgment;

"(2) That the plaintiff have and recover of the defendant Equitable Fire and Marine Insurance Company the sum of $3,-088.35 with interest thereon at six per cent per annum from the date of this judgment;

"(3) That the total to be recovered by the plaintiff from both defendants under the terms of this judgment is $4,500.00 with interest thereon at six per cent from the date of this judgment, for which total sum the defendant W. K. Batson, as principal, is primarily liable and the defendant Equitable Fire and Marine Insurance Company, as surety, is secondarily liable, to the extent of $3,088.35, with interest, and no more, and upon payment by the defendant Equitable Fire and Marine Insurance Company to the plaintiff of the amount herein adjudged to be recoverable by the plaintiff from it, it shall have and recover the amount of such payment from the defendant W. K. Batson and, to the extent of

such payment by it, it shall succeed to and have all of the rights of the plaintiff against the defendant W. K. Batson under this judgment, subject, however, to the prior right of the plaintiff to recover the remainder of the total sum of $4,500.00 with interest from the defendant W. K. Batson;

"(4) The defendants shall pay the costs of this action to be taxed by the Clerk."

Equitable excepted and appealed, assigning errors.

*Wood & Stone for plaintiff appelle.*
*Fletcher, Lake & Boyce for defendant Equitable Fire & Marine Insurance Company, appellant.*

BOBBITT, J. Equitable contends the court erred (1) in overruling its motion for judgment of nonsuit, and (2) in rulings relating to certain evidence.

The original contours of the land had been leveled by "cuts" and "filling in," and the streets had been rough-graded but not paved, when Batson's work began.

R. W. Clayton, plaintiff's secretary and general manager, executed said contract in plaintiff's behalf and acted for plaintiff in its dealings with Batson. Clayton testified Batson began work "the latter part of April or in May, 1957, and . . . stopped the actual machine work, the covering up and all in the latter part of June or July, 1957." Batson testified he began work on April 7, 1957, or on April 9, 1957, and "finished up" on June 19, 1957, and moved his equipment away; that, after the curbs and gutters had been put in, he went back "for a couple of days" to adjust the water meters on the service lines and sewer stacks; that these adjustments were made "in July, or the first of August, of 1957"; and that, immediately after these adjustments were made, he received from plaintiff (August 6, 1957) a payment of $6,000.00.

At first Burns, the engineer who had prepared plaintiff's overall plans, and later Jones, did the surveying, laid out the lines and furnished the grades from the drawings covering this job.

Batson testified he submitted two estimates. The first, payable May 10, 1957, was for $10,215.00. The second (final), submitted June 22, 1957, was for $19,166.48, which included the $10,215.00. (Note: It was stipulated that $19,116.48 was the correct total amount due Batson.)

Clayton testified plaintiff paid Batson as follows: $8,000.00 on May 14, 1957; $2,500.00 on July 1, 1957; $6,000.00 on August 6, 1957; $1,000.00 on September 17, 1957; $666.48 on December 10, 1957; and

$500.00 on April 7, 1958. (Note: Plaintiff admitted it owed Batson a balance of $500.00. The record contains no explanation as to why this amount was not paid to Batson.)

Equitable offered in evidence a paper writing entitled "CONTRACT STATUS INQUIRY," bearing date of September 6, 1957. This inquiry, addressed by Equitable to plaintiff, requested information relevant to the bond executed by Equitable as Batson's surety. Questions thereon and the answers thereto (executed in plaintiff's behalf by Clayton) are as follows: "Has work been completed and accepted (yes or no) Yes. If not completed approximate percentage done . . . Approximate amount paid contractor to date ......... ... .......... ........ Amount of retained percentage $2,666.48. Has work progressed satisfactorily to date: Yes. So far as you know are labor and material bills paid to date: Materials furnished by owner."

With reference to said paper writing, Clayton testified: "On September 6, 1957, I signed and returned to Mr. Batson a paper stating that the job had been completed and I accepted it. When Mr. Batson brought me this paper here, stating that the work had been finished, and so far as he knew in good shape, and I didn't know at that time that it wasn't in good shape, I agreed with him; I was satisfied that it was in good shape. It seems that at that time my company held $2,-666.48 due to Mr. Batson by the terms of the contract; I so stated in that paper."

No defects in Batson's work were reported to Clayton by Burns or by Jones. There is no evidence that either Burns or Jones had knowledge of any faulty construction or workmanship. Plaintiff testified that Jones, plaintiff's engineer, reported to him "that the work had been done"; and that he made said payments to Batson "(i)n reliance upon what Mr. Jones had told (him)." Clayton was not advised of any defects until the City refused to approve the paving of the streets, approximately a year after Batson had finished his work.

In June or July of 1958, to determine whether plaintiff would be permitted to proceed with the paving of the streets, an inspection was made by Berrier, Street Superintendent of Winston-Salem, and by Pettit, an Inspector for Berrier. By this inspection, according to their testimony, they discovered defects in the underground work installed by Batson (storm sewer lines, manholes and catch basins); and that Batson's work, in enumerated particulars, was not "in accordance with the standards and workmanship required by the City of Winston-Salem, N. C."

Batson, at Berrier's request, met Berrier at the work site. Berrier pointed out the conditions he considered defective. According to Berrier, Batson (whose place of business was in Charlotte) stated he

had brought only one man with him; that he did not anticipate the work to be done was so extensive; and that he would come back the next week and make adequate corrections. Berrier testified further that Batson later telephoned him and then stated he had decided not to come back and do the work; and that Batson gave as a reason for this decision his inability to collect from plaintiff the $500.00 balance due him under the contract. Berrier and Pettit testified in detail as to the defective conditions plaintiff was required to have corrected before it could go forward with the paving of the streets. Plaintiff's evidence tends to show it expended $6,925.09 to have made the corrections pointed out by Berrier and Pettit.

Batson contended and offered evidence tending to show: (1) that all work was done in strict accordance with instructions received from Burns and Jones, plaintiff's engineers; (2) that certain of the changes required by the City officials related to the elimination of curves in pipelines laid in accordance with instructions of plaintiff's engineers and to the re-laying of pipelines at depths different from those designated by plaintiff's engineers; and (3) that certain of the work required by the City officials related to matters not covered by the plans furnished by plaintiff to Batson. Even so, there was ample evidence to support findings that, in certain respects, Batson's construction and workmanship were faulty. While Batson's said contentions are noted, the questions presented by Equitable on this appeal do not relate to whether Batson breached his contract in respect of designated particulars. Rather, the question now presented is whether Equitable's motion for judgment of involuntary nonsuit should have been allowed.

Batson's breach of said contract and plaintiff's damages are established by the verdict. Equitable, to support its motion for judgment of nonsuit, must rely upon matters alleged in its further defenses. In this connection, it is noted that the burden of proof rests upon Equitable to establish one or more of its alleged affirmative defenses. *Aldridge Motors, Inc., v. Alexander,* 217 N.C. 750, 756, 9 S.E. 2d 469. Since no issue was submitted or tendered with reference thereto, the question, in respect of nonsuit, is whether plaintiff's evidence establishes any of Equitable's affirmative defenses.

In its answer, Equitable alleged that Batson had fully performed said contract and that plaintiff had advised Equitable in writing on September 6, 1957, "that the work had been completed and accepted and had progressed satisfactorily." As a further defense, Equitable alleged: Batson laid the pipe in accordance with the lines and grades designated by plaintiff's engineers and plaintiff is estopped to assert any claim on account thereof.

Equitable, apparently after verdict, moved for leave to amend its

complaint by alleging: (1) As a second further defense: Plaintiff, by its reply on September 6, 1957, to Equitable's "CONTRACT STATUS INQUIRY," is estopped to assert a claim against Equitable on account of Batson's alleged failure to perform said contract. (2) As a third further defense: Plaintiff accepted Batson's work as complete and satisfactory and paid Batson, with the exception of $500.00, the balance due according to the final estimate; and, by reason of plaintiff's said payments to Batson in disregard of its duty to retain these amounts until Batson had satisfactorily completed the work, Equitable is entitled to a credit of $9,922.98 against any claim plaintiff might have against Batson. (Note: Equitable's *alleged* credit of $9,-922.98 consists of $1,021.50, 10% of the first estimate, plus $8,901.48, the amount due for the work covered by the final estimate.)

The record contains no order or ruling allowing or disallowing Equitable's said motion. However, Equitable's exceptions include an exception to the court's denial of its motion "for permission to amend its answer as appears in the record." Equitable contends the amendment merely conforms its pleading to the proof and should have been allowed and in its brief moves that this Court now allow its said motion.

For present purposes, we shall treat the amendment as allowed and consider the evidence in relation to Equitable's alleged further defenses, including the second and third further defenses alleged in said amendment.

In respect of Equitable's first further defense, Batson's evidence tends to show the installations *were located* as laid out by plaintiff's said engineers. However, even if this were established, it would not relieve Batson from liability for defective conditions in the underground work caused by faulty construction and workmanship. Jones identified his vocation as "land surveyor." Equitable suggests that Jones, after all the pipe was covered, could have discovered defective conditions, as detected later by Berrier and Pettit, "by visual inspection through simply getting into the manholes and catch basins, looking at them and looking through the pipelines entering them by means of flashlight and mirror." Certainly, the ability of Jones to detect defective conditions in the underground work by such so-called simple means is not established by plaintiff's evidence or otherwise.

In respect of Equitable's second further defense, it is noted that plaintiff had made all payments to Batson, except as to $2,666.48, when plaintiff received and answered Equitable's "CONTRACT STATUS INQUIRY." In our view, plaintiff's answers to this inquiry simply confirmed the admitted fact that plaintiff, based on the as-

surances of Batson and of Jones, acted in the honest (but mistaken) belief that Batson had satisfactorily performed his contract.

We consider now Equitable's third further defense.

It is well settled that, where a bond is given to secure the faithful performance of a construction contract, the contract and the bond must be construed together. *Builders Corp. v. Casualty Co.*, 236 N.C. 513, 73 S.E. 2d 155, and cases cited; *Edgewood Knoll Apartments v. Braswell*, 239 N.C. 560, 572, 80 S.E. 2d 653, rehearing denied, 240 N.C. 760, 83 S.E. 2d 797.

Equitable contends that plaintiff had the right, and that its duty to the surety required, that plaintiff withhold payment of the $9,922.98 "until completion and acceptance of the work by the engineers." Equitable cites *Ins. Co. v. Durham County*, 190 N.C. 58, 128 S.E. 469; *Mfg. Co. v. Blalock*, 192 N.C. 407, 135 S.E. 136, and *Crouse v. Stanley*, 199 N.C. 186, 154 S.E. 40. In the cases cited, the contractor defaulted and abandoned the job and the surety was called upon to complete the job. In such cases, it is held the surety has a substantial right in contractual provisions authorizing the owner to retain certain percentages of the amount due as progress payments for completed work. In short, the surety is held entitled to a credit to the extent the owner makes *premature* payments, that is, payments in excess of the amount the contractor is entitled to receive as progress payments on account of completed work. In our view, these decisions are not controlling. Here, no question arises as to the quantity of work done by Batson. Rather, the defects relate to faulty construction and workmanship.

"The obligation of a surety is primary, and the surety becomes bound as an original debtor is bound. He is directly and equally bound with his principal." *Milling Co. v. Wallace*, 242 N.C. 686, 89 S.E. 2d 413, 53 A.L.R. 2d 517, and cases cited; *Pickett v. Rigsbee*, 252 N.C. 200, 113 S.E. 2d 323.

In *Jones v. Realty Co.*, 226 N.C. 303, 37 S.E. 2d 906, Stacy, C.J., says: "The heart of a contract is the intention of the parties." Again: "It is also a rule of construction that an ambiguity in a written contract is to be inclined against the party who prepared the writing. *Wilkie v. Ins. Co.*, 146 N.C. 513, 60 S.E. 427."

Batson prepared the contract. In Section 2, it is expressly provided that the water, sanitary and storm sewer lines are to be constructed by Batson, first, "as shown on Owner's drawing," and *second*, "in accordance with the standards and workmanship required by the City of Winston-Salem, N. C." Clearly, it was contemplated that Batson's work was to be performed in accord with the City's requirements.

The crucial question is whether plaintiff's acceptance of Batson's work and payment therefor under the honest (but mistaken) belief

that Batson had fully performed his contract, released the surety *pro tanto,* that is, to the extent of the amount plaintiff was entitled to retain prior to completion and acceptance of Batson's work.

"Where work is accepted with knowledge that it has not been done according to the contract or under such circumstances that knowledge of its imperfect performance may be imputed the acceptance will generally be deemed a waiver of the defective performance. But this rule does not apply to latent defects. The acceptance of work which has been defectively done, the defects being unknown and not discoverable by inspection, does not amount to a waiver of the imperfect performance." 12 Am. Jur., Contracts § 355. Annotation: 109 A.L.R. 625, *628.* In *City of Seaside v. Randles* (Oregon), 180 P. 319, it is stated: "An acceptance of work done under a construction contract does not constitute a waiver of latent defects of which the owner was ignorant at the time, or which may appear thereafter." In the cited Oregon case, defects in a sewer system were held latent defects.

Consideration of the evidence leads to the conclusion that the defects referred to in the evidence may properly be considered latent defects. It may be that Berrier or Pettit or other qualified inspectors could have discovered all or certain of such defects if they had been called upon to make such inspection immediately after Batson had completed his work and before acceptance by plaintiff and plaintiff's payments to Batson. Equitable contends that plaintiff should have required such inspection before such acceptance and payments. Hindsight suggests that this should have been done. However, plaintiff's evidence does not establish as a matter of law that it was negligent in this respect.

In *Mayor, etc., City of Newark v. New Jersey Asphalt Co.* (N.J.), 53 A. 294, referring to the defendants' plea that they (the contractor and surety) were discharged on account of acceptance and payment by the City of Newark, the court said: "The plea, to be a complete bar, must go further, and allege that the plaintiff accepted and paid for such work before suit brought, with knowledge of the facts alleged as breaches in the declaration. A surety on such a bond as the one here sued upon can be released only by some positive act done by the plaintiff to the prejudice of the surety, as acceptance and payment with knowledge would be, or some negligent act which will imply connivance amounting to fraud. The payment by a city on work accepted by it under an honest belief that it was done in the manner required by the contract will not release a surety. Prejudicial action or fraud will not be inferred where no facts appear to justify it."

The conclusion reached is that plaintiff's evidence does not establish as a matter of law any of Equitable's said further defenses. Hence, Equitable's motion for judgment of nonsuit was properly overruled.

The second question presented by Equitable is based on its exception to the court's denial of its motion to strike from the evidence plaintiff's Exhibit 2. Plaintiff's Exhibit 2 consists of pages 23 and 24 of a booklet captioned, "CITY OF WINSTON-SALEM, N. C., DEPARTMENT OF PUBLIC WORKS STANDARD SPECIFICATIONS FOR PUBLIC WORKS CONSTRUCTION, 1954." Plaintiff's Exhibit 2 was admitted, without objection, when identified by Berrier as the City's standard specifications "for the construction of a storm sewer or drain pipes in street construction." Equitable's motion to strike was made after Clayton had testified he did not know whether he and Batson had or discussed Exhibit 2 at the time the contract was executed. Be that as it may, to determine whether Batson had performed his work "in accordance with the standards and workmanship required by the City of Winston-Salem, N. C.," the standard specifications of the City of Winston-Salem for such work were material and competent. In our view, the court properly denied Equitable's said motion.

It is noted that the judgment against Equitable is for $3,088.35, the court having allowed a credit of $1,911.65. Plaintiff did not except or appeal. Suffice to say, the allowance of this credit of $1,911.65 was not unfavorable to Equitable.

No error.