An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA 14-226
NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014


COUNTRY CAFAYE, INC., and
RODNEY BOOTH,
     Plaintiffs,

     v.                                        Stokes County
                                               No. 12 CVS 508
TRAVELERS CASUALTY
INSURANCE COMPANY OF AMERICA,
and WHITLEY INSURANCE
AGENCY, INC., d/b/a WHITLEY
REAVIS INSURANCE AGENCY,
     Defendants.


     Appeal by Plaintiffs from orders entered 19 August and 29 August 2013 by Judge Edgar B. Gregory in Stokes County Superior Court.  Heard in the Court of Appeals 13 August 2014.


     *J. Clark Fischer for Plaintiffs.*

     *Womble Carlyle Sandridge & Rice, by Philip J. Mohr and Garth A. Gersten, for Defendant Travelers Casualty Insurance Co of America.*

     *McNair Law Firm, P.A., by Andrew W. Lax and Samuel I. Moss, for Defendant Whitley & Associates, Inc.*[1]

---

[1] This defendant is erroneously denominated "Whitley Reavis Insurance Agency" in the caption of this action.  This defendant has pointed out this error in its answer and motion for summary judgment, but has not raised the incorrect party name as a legal

STEPHENS, Judge.

*Factual Background and Procedural History*

This appeal arises from an action alleging improper cancellation of an insurance policy and denial of coverage. The facts before the trial court are as follows:

Plaintiff Rodney Booth was the owner and operator of Plaintiff Country Cafaye, Inc., a company formed for the operation of a casual dining restaurant located in King, North Carolina. In 2010, Booth obtained a general commercial liability insurance policy for Country Cafaye from Roy Whitley of Defendant Whitley & Associates, Inc. Booth had previously dealt with Whitley in connection with a policy insuring a radio station owned by Booth's parents, but managed by Booth. The policy for Country Cafaye was the first insurance policy which Booth had purchased directly through Whitley. The general commercial liability insurance policy for Country Cafaye was issued by Defendant Travelers Casualty Insurance Company of

issue in this litigation. Following the custom and practice of this Court, we employ in the caption of our opinion the party names exactly as they appear in the orders from which this appeal is taken.

America. Booth renewed this policy in November 2011 to be effective from 7 January 2012 through 7 January 2013.

Booth opted to pay the premium for the insurance policy in monthly installments of $290.90. Bills for each premium payment were sent out monthly by Travelers to the address for Country Cafaye stated on the insurance policy: P.O. Box 1172, King, NC 27021. Premium payments were due on the seventh of each month. Plaintiffs paid the premiums for January and February 2012. Each premium was paid after the due date, but was accepted by Travelers. A bill for the March premium dated 16 February 2012 was sent to and received by Plaintiffs.

Plaintiffs and Travelers disputed the facts surrounding the payment of the March 2012 premium and the mailing of a notice of cancellation to Plaintiffs. Plaintiffs forecast evidence in sworn affidavits from Booth and his employee, Faye Watts, that on 16 March 2012 Booth wrote and signed a check from an account in the name of Rodney T. Booth Enterprises, Inc., for payment of the March 2012 premium. Booth then watched Watts mail the premium check with appropriate postage to Travelers from the King Post Office. Booth further stated in his affidavit that he did not receive the notice of cancellation purportedly mailed by Travelers.

Travelers forecast evidence showing that the March premium check Booth allegedly mailed was never received. Travelers performed an "internal search for any checks written by Country Cafaye or Booth or any affiliated entities," but has been unable to find any such check. Travelers further produced documents tending to show that it mailed a notice of cancellation of Country Cafaye's policy on 19 March 2012 to the address given on the policy, P.O. Box 1172, King, NC 27021. The notice of cancellation stated that Country Cafaye's insurance policy would be cancelled effective 8 April 2012 unless a minimum payment of $581.80 was received by Travelers on or before 8 April 2012. Plaintiffs did not make payment of $581.80 to Travelers on or before 8 April 2012, although Booth did mail a check for the regular April premium amount of $290.90 to Travelers on 19 April 2012. Travelers received that check on 26 April 2012.

On the evening of 19 April 2012, a grease fire destroyed the restaurant owned by Plaintiffs. On the morning of 20 April 2012, Booth informed Roy Whitley of the fire and "catastrophic damage" to the restaurant. Roy Whitley told Booth that he would speak to Travelers regarding a claim for the damage to the restaurant.

That afternoon, Roy Whitley informed Booth that Country Cafaye's insurance policy had been cancelled on 8 April 2012 because Travelers had purportedly not received the March premium payment. Whitley asserts that it was not aware of this notice of cancellation until Roy Whitley found it on his desk on 20 April 2012. Roy Whitley asked Booth if he had proof that the March premium had been paid. Booth was able to find and fax to Whitley the check stub for the payment purportedly sent to Travelers in payment of the March premium. Booth confirmed with his bank that the check was never cashed. Travelers denied coverage for damage to the restaurant on the basis that the insurance policy had been cancelled as of 8 April 2012.

On 20 April 2012, Travelers sent a bill to Country Cafaye for $150.20 representing the earned premium amount for the period from 7 March through 8 April 2012. The bill stated in multiple places that Country Cafaye's insurance policy had been cancelled as of 8 April 2012. Booth paid the bill by check on 26 April 2012 using the payment coupon provided without paying attention to the textual statements in the bill. Travelers cashed both the 19 April 2012 check for $290.90 and the 26 April 2012 check for $150.20. Travelers subsequently returned $290.90 to Country Cafaye on 21 May 2012.

On 27 July 2012, Plaintiffs filed this action alleging that (1) Whitley breached a fiduciary duty to Plaintiffs and committed professional malpractice and (2) Travelers breached the contract of insurance and was unjustly enriched. Whitley moved for summary judgment on 8 May 2013. Travelers moved for summary judgment on 9 May 2013. On 19 August 2013, the trial court entered an order granting summary judgment in favor of Travelers. On 29 August 2013, the court entered an order granting summary judgment to Whitley. Plaintiffs appeal from both orders.

*Discussion*

On appeal, Plaintiffs argue that the trial court erred in granting summary judgment in favor of (1) Travelers because there were issues of material fact regarding whether Travelers breached the insurance contract, and (2) Whitley because there were issues of material fact regarding whether Whitley breached a fiduciary duty.

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576

(2008) (citation and internal quotation marks omitted; italics added).

> The moving party has the burden of establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party.

*White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 295-96, 603 S.E.2d 147, 157 (2004) (citations omitted), *disc. review denied*, 359 N.C. 286, 610 S.E.2d 717 (2005).

> A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.
>
> Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial. To hold otherwise would be to allow [the] plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment.

*Stott v. Nationwide Mut. Ins. Co.*, 183 N.C. App. 46, 49, 643 S.E.2d 653, 656 (citation, internal quotation marks, and ellipsis omitted), *disc. review denied*, __ N.C. __, 653 S.E.2d 876 (2007).

*I. Summary Judgment as to Travelers*

Plaintiffs first argue that summary judgment in favor of Travelers was error because the forecast of evidence establishes a genuine issue of material fact, to wit, whether Travelers properly cancelled Plaintiffs' insurance policy and therefore avoided any breach of contract by denying coverage for the restaurant fire. We agree.

The notice of cancellation issued 19 March 2012 and purportedly sent to Plaintiffs stated that the reason for cancellation of the policy was nonpayment of the premium. Under the relevant policy conditions, cancellation for nonpayment of the premium requires ten days' notice to the policyholder. Cancellation for any other reason requires thirty days' notice to the policyholder. Plaintiffs contend that the March premium payment Booth and Watts claim was mailed on 16 March 2012 was received by Travelers prior to the cancellation of the policy. Travelers contends it was not. This forecast of conflicting evidence presents a question of material fact because, if the

March premium was received, Travelers' cancellation of the policy and denial of coverage were breaches of the insurance contract. If the premium was not received, Travelers did not breach the contract by cancelling the policy and denying coverage.

Payment of an insurance premium is a condition precedent to coverage. *Engelberg v. Home Ins. Co.*, 251 N.C. 166, 168, 110 S.E.2d 818, 820 (1959) (citation omitted). It is well established that a payment made by check is a conditional payment until paid by the bank on which it is drawn. *See Paris v. Carolina Builders Corp.*, 244 N.C. 35, 38, 92 S.E.2d 405, 408 (1956). "[W]hen a draft or check is accepted in payment of an obligation and is paid on presentation, payment ordinarily relates back to the time the draft or check was delivered to the payee or his duly authorized agent." *Id.* (citations omitted). "Evidence of the deposit in the mail[] of a letter, properly stamped and addressed, establishes *prima facie* that it was received in the regular course of the mail by the addressee." *Wilson v. Claude J. Welch Builders Corp.*, 115 N.C. App. 384, 386, 444 S.E.2d 628, 629 (1994) (citations omitted; italics added). "Evidence of nonreceipt of the letter by the addressee or by his agent is some evidence that the letter was not mailed

and *raises a question of fact for the trier of fact.*"  *Id.* (citations omitted; emphasis added).

Travelers correctly notes that the issues of payment and mailing of the check for payment are not synonymous and cites cases in which conditional payments by check have not been recognized.  Those cases are easily distinguishable in that they involve checks that were received by the payee *but not honored when presented to the drawee bank.  See Hayworth v. Philadelphia Life Ins. Co.*, 190 N.C. 757, 759-60, 130 S.E. 612, 613-14 (1925) ("A worthless check is not a payment. . . .  The failure to have the funds in the bank to meet the check was the fault of the drawer, and no loss resulted from any delay on the part of the payee."); *see also Commercial Cas. Ins. Co. v. Durham Cnty*, 190 N.C. 58, 62, 128 S.E. 469, 471 (1925) ("The checks which were not paid do not constitute payments.") (citation omitted).

We further agree with Travelers that the evidence is undisputed that the check purportedly written by Booth on 16 March 2012 was never presented to or paid by the drawee bank. However, unlike in *Hayworth* and *Commercial Cas. Ins. Co.*, there has been no failure of the condition that the check "be . . . paid on presentation[.]"  *See Paris*, 244 N.C. at 38, 92 S.E.2d at 408.  Rather, the check has not been presented to the drawee

bank at all. The genuine issue of material fact in this matter concerns the *reason* the check was not presented to the drawee bank: because no check was ever written and mailed by Plaintiffs, because Travelers received the check but failed to present it, or because Plaintiffs sent the check and it was lost in the mail. Resolution of this issue by the finder of fact will, in turn, determine whether the cancellation notice was properly issued by Travelers.

Each side has presented evidence that tends to support an answer to this question of fact in their own favor. Plaintiffs have presented evidence in the form of a check stub from the check purportedly written and mailed 16 March 2012 and affidavits from two witnesses averring that the check was written and then mailed to Travelers on that date. This evidence establishes *prima facie* that the check was received by Travelers. *See Wilson*, 115 N.C. App. at 386, 444 S.E.2d at 629. Travelers has presented evidence of nonreceipt of the 16 March check in the form of an affidavit from its regional controller stating that it conducted an "internal search for any checks written by Country Cafaye or Booth or any affiliated entities," but has been unable to find the 16 March 2012 check. As noted *supra*, this "[e]vidence of nonreceipt . . . is some evidence

that the letter was not mailed and *raises a question of fact for the trier of fact*." *Id.* (citations omitted; emphasis added). We must reject Travelers' suggestion that the fact that the 16 March 2012 check was never paid by the drawee bank means there is no evidence that Plaintiffs paid their March premium. Travelers is in effect asking this Court to "take its word for it" that no check was received, just as Plaintiffs urge that we believe their affidavits that the check was written and properly mailed. It is the role of a fact-finder at trial, and not of this Court, to weigh the credibility of such conflicting evidence.[2] Thus, "[s]ummary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist." *Stott*, 183 N.C. App. at 49, 643 S.E.2d at 656.

Determining the facts on this point is the critical first step to the proper resolution of this case. Should a fact-finder conclude that Plaintiffs' evidence is more credible than Travelers' evidence on this point, a further factual issue would

---

[2] We note that the finder of fact could decide that both Plaintiffs and Travelers are telling the truth, and that the check was mailed, but lost by the postal service. In those circumstances, Travelers would have been entitled to cancel Plaintiffs' policy upon giving Plaintiffs ten days' notice. In that case, the parties have forecast evidence of another disputed issue of material fact: Travelers claims it mailed Plaintiffs the cancellation notice, which Plaintiffs claim they never received.

arise: whether Travelers would have received the check mailed 16 March 2012 before Travelers sent the notice of cancellation of Plaintiffs' policy on 19 March 2012. If the check was received by Travelers on or before 19 March 2012, the notice, which states that the reason for cancellation is the nonpayment of the March premium, was incorrectly issued and without effect. Cancellation for any other reason would have required thirty days' notice under Plaintiffs' policy. Thus, Travelers' arguments to this Court as to whether Plaintiffs made the minimum payment stated in the cancellation notice by the 8 April 2012 deadline are premature. This matter will be relevant only *if* the finder of fact determines that the cancellation notice was properly issued, either because the 16 March 2012 check was never sent to Travelers or that it was sent but not received prior to issuance of the cancellation notice. Those questions of material fact remain unresolved. Accordingly, the trial court erred in granting summary judgment in favor of Travelers.

*II. Summary Judgment as to Whitley*

Plaintiffs argue that they have forecast sufficient evidence to create a genuine issue of material fact as to whether Whitley had a course of dealing with Plaintiffs that established a fiduciary duty to notify Plaintiffs of the

cancellation of the insurance policy. Consequently, Plaintiffs contend that summary judgment in favor of Whitley was error. We disagree.

"An insurance agent has a limited fiduciary duty to the insured, to wit, the agent must correctly name the insured in the policy and correctly advise the insured of the nature and extent of his coverage under the policy." *Cobb v. Pa. Life Ins. Co.*, 215 N.C. App. 268, 275, 715 S.E.2d 541, 548 (2011) (citation omitted).

> An implied duty to advise may only be shown if: (1) the agent received consideration beyond mere payment of the premium; (2) the insured made a clear request for advice; or (3) there is a course of dealings over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice was being sought and relied on.

*Id.* (citation, internal quotation marks, and brackets omitted). Evidence of a long-standing business relationship is insufficient by itself to show a course of dealing which would put a reasonable insurance agent on notice that his advice is being sought and relied upon. *See Bigger v. Vista Sales & Mktg, Inc.*, 131 N.C. App. 101, 105, 505 S.E.2d 891, 893-94 (1998).

Plaintiffs do not allege either that Whitley received compensation beyond the premium or that Plaintiffs made a clear

request for advice. The only basis on which Plaintiffs argue that Whitley had a fiduciary duty is that there was an extended course of dealing over fifteen years with Booth and his family. Despite this allegation, however, the record is clear that Plaintiffs themselves had no insurance contract with Whitley prior to the 2011 policy purchased for Country Cafaye. Further, Plaintiffs do not present any evidence of specific communications which would put a "reasonable insurance agent on notice that his advice was being sought and relied on." *Cobb*, 215 N.C. App. at 275, 715 S.E.2d at 548 (citation, internal quotation marks, and brackets omitted). Instead, Booth merely states in his affidavit that "if an issue ever arose Whitley would call and discuss the matter with me." This statement did not differentiate between the policy at issue and the previous policies owned by other Booth family members. The only specific communication, beyond procuring the policy, that Booth contends that he had with Whitley regarding the Country Cafaye policy had to do with obtaining a copy of the renewal policy. Booth plainly states in his deposition that he had no other communication with Whitley regarding the Country Cafaye policy. Even considered in the light most favorable to Plaintiffs, this communication is not a solicitation of advice from Whitley and

is certainly not sufficient to put a reasonable insurance agent on notice that his advice is being sought and relied upon.

Plaintiffs further offered the affidavits of Elizabeth Newsom, Booth's niece, and Peggy T. Booth, Booth's mother, to support the extent of the relationship with Whitley. Both affidavits aver that the Booth family had been a long time customer of Whitley, and that Roy Whitley would call Booth to discuss "any issues" with the various insurance policies the family has held. However, neither affidavit presents nor forecasts any evidence of specific conduct creating a course of dealing between Whitley and Plaintiffs. Booth expressly states that he relied on Whitley based on their "lengthy relationship," referring to his family's relationship with Whitley. Even if Booth could use Whitley's conduct regarding insurance policies owned by his parents to create a course of dealing with regard to his own insurance policy for Country Cafaye, the evidence presented is insufficient. Plaintiffs present evidence of a long-standing business relationship only, which is not enough to put a reasonable insurance agent on notice that his advice is being sought and relied upon. Therefore, Plaintiffs did not present evidence sufficient to show the existence of a fiduciary

duty on the part of Whitley. Accordingly, we affirm the trial court's grant of summary judgment in favor of Whitley.

REVERSED IN PART; AFFIRMED IN PART.

Judges CALABRIA and ELMORE concur.

Report per Rule 30(e).