357 F.Supp. 918 (1973)
MISSOURI ROOFING COMPANY, INC., a corporation, Plaintiff,
v.
UNITED STATES of America (GSA), Defendant.
No. 72 C 172 (A).
United States District Court, E. D. Missouri, E. D.
March 12, 1973.
*919 Kenney, Leritz & Reinert, St. Louis, Mo., for plaintiff.
Daniel Bartlett, Jr., U. S. Atty., J. Patrick Glynn, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, Senior District Judge.
This matter is before the Court on the motion of defendant, United States of America, for summary judgment supported by Exhibits 1 through 26, filed with defendant's answer, which consisted of the General Services Administration Board of Contract Appeal's record in the instant case, and on the cross-motion of plaintiff, Missouri Roofing Company, Inc., for summary judgment supported by affidavit. Both motions, in effect, rely on the record of the General Services Administration Board of Contract Appeals, and there is no dispute as to the facts to be considered by this Court. This action is governed by the Wunderlich Act, 41 U.S.C. §§ 321 and 322. This Court has jurisdiction under 28 U.S.C. § 1346(a)(2).
Defendant, acting through its administrative agency, General Services Administration, Public Building Service, Region 6, awarded a lump sum contract (No. GS-06B-8311 [Ex. 1]) to plaintiff for $131,712.00 for the replacement of the built-up roofing and insulation at the Military Personnel Records Center located at 9700 Page Boulevard, St. Louis, Missouri. The contract provides for the assessment of liquidated damages of $40.00 per calendar day for each calendar day of delay beyond one hundred days from the date of receipt of the notice to proceed (Ex. 1 § 2.2). Section 5(d) of the General Provisions of the contract provides:
"The Contractor's right to proceed shall not be so terminated nor the Contractor charged with resulting damage if:
"(1) The delay in the completion of the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor, including but not restricted to * * * acts of the Government in either its sovereign or contractual capacity, * * *, [or] unusual weather conditions, * * *.
"(2) The Contractor, within ten days from the beginning of any such delay * * *, notifies the Contracting Officer in writing of the causes of delay.

*920 "The Contracting Officer shall ascertain the facts and the extent of the delay and extend the time for completing the work when, in his judgment, the findings of fact justify such an extension, and his findings of fact shall be final and conclusive on the parties, subject only to appeal as provided in Clause 6 of these General Provisions."
Section 5-3 of the contract provides in part that: "No part of the roofing materials shall be applied or laid during damp or rainy weather or while moisture of any kind is present in visible amount on the surface that is to be covered."
Plaintiff requested extensions at various times during the project, some of which were granted. Plaintiff alleges in its complaint that defendant acted in a capricious and arbitrary manner in failing to grant certain extensions plaintiff requested and that these decisions of defendant were so grossly erroneous as to imply bad faith. Plaintiff alleges that defendant has paid $129,212.00 on the contract, leaving a balance due of $2,500.00, and that defendant has refused to pay the balance, contending plaintiff is liable for liquidated damages. Plaintiff prays for judgment against defendant for the sum of $2,500.00, with interest at the rate of six percent from June 26, 1964, and for costs and attorneys fees.
Plaintiff has exhausted its administrative remedies in that it appealed to the General Services Administration Board of Contract Appeals and upon an adverse decision moved for reconsideration, whereupon the Board of Contract Appeals affirmed its prior decision.
Plaintiff, in its brief, contends that it was not granted the complete extension to which it was entitled because of the delays caused by the weather during the month of December, contends that defendant used an incorrect method for calculating the extensions of time to which plaintiff was entitled because of delays caused by the weather, and contends that defendant was obliged to grant it an extension for the delay resulting from defendant's late approval of the materials plaintiff proposed to use on the project.
Those portions of the opinion of the General Services Administration Board of Contract Appeals which are applicable to plaintiff's contentions state:
"* * * Although the Appellant received the notice to proceed on November 5, 1963, the record shows that the information required by Paragraphs 5-4(b) and 6-5 [a materials list and certificates] was not mailed to the Government until November 26, 1963. The record does not show the date on which this information was actually received by the Government but it does show that the Government gave its approval on December 3, 1963. In the opinion of the Board, the Government's approval was given within a reasonable time after it received the Appellant's submission. Accordingly, it must be held that any delay in the start of the work due to the late approval of the Appellant's materials list and certificates was due to the fault and negligence of the Appellant and was not caused by the Government.
* * * * * *
"The Contracting Officer, acting in response to the several requests which it had received from the Appellant, granted extensions of time for delays due to weather conditions during the months of December 1963, January, February, March, April, May, and June 1964. Inasmuch as there is no evidence that the weather conditions during these months were `unusually severe' within the meaning of Clause 5(d) of the General Provisions, it is quite clear that the several extensions of time were granted by the Contracting Officer under the provisions of Paragraph 5-3 of the specifications. The record shows that the Appellant accepted without objection or protest the various extensions of time which were granted for the months of December, January, February, March, and April. Furthermore, an examination *921 of the record shows that the Contracting Officer granted an extension of one full day for each day (except Saturdays and Sundays) when the Appellant did not work at the project site during the months of May and June 1964.
* * * * * *
"In appeals such as the present one, the Appellant has the burden of proving that its failure to complete the work within the time stipulated in the contract was due to causes which are excusable under the terms of the contract. In the opinion of the Board, the Contracting Officer granted extensions of time for all delays which the record showed were excusable. Accordingly, on the basis of the record before the Board, it must be held that the Appellant has failed to sustain its burden of proof and, therefore, it cannot be relieved of its obligation to pay the liquidated damages."
An examination of the record before the Board of Contract Appeals reveals that all of the facts pertinent to the delay resulting from the requirements of 5-4(b) and 6-5 of the contract are fully and correctly stated in the above quoted portions of the opinion of the Board of Contract Appeals.
The opinion of the Board of Contract Appeals does not fully set out the method used in determining the length of extensions defendant granted for delays caused by the weather. The delays were assessed on a workday basis, whereas extensions were granted on a calendar day basis. A good example of this is provided by an examination of the delays assessed and the extensions granted for January, 1964. Plaintiff submitted to defendant a list of days during January on which plaintiff contended it was unable to work due to the weather (Ex. 9). According to this list, the weather conditions did not allow plaintiff to work from January 8 through January 20, January 28, and January 31 (a total of 15 days). Plaintiff was granted an extension of eleven days, all of the days plaintiff listed except for the Saturdays and Sundays which fell between January 8th and January 20th. This eleven-day extension changed the completion date from March 8 to March 19, 1964 (Ex. 10). This period included a Saturday and a Sunday.
The method used in granting extensions for delays caused by the weather contrasts with the method used by defendant in granting plaintiff an extension to cover a delay in the start of the work caused by changes in the specifications. In that instance, plaintiff was unable to work from November 5 through November 18, 1963 (Ex. 7, Item 50). The Contracting Officer granted plaintiff a fourteen-day extension in that instance. Thus, both the assessment of the delay and the granting of the extension were done on a calendar day basis.
Plaintiff's request for an extension because of delays caused by the weather during December, 1963, listed December 7th through December 31st as the days on which plaintiff contended it could not work because of the weather (Ex. 7). Defendant allowed a ten-day extension. The findings upon which defendant based its determination to grant plaintiff ten days (Ex. 8) stated that the "contractor listed ten days during which there was snow or ice on the roof making work impossible, as verified by the local climatological data sheet." The local climatological data for December (Ex. 7) shows that there was precipitation on both December 7th and December 8th, and that from December 9th through December 27th there was snow or sleet on the ground. For December 29th, 30th and 31st, plaintiff's list stated that no work could proceed because of the cold. The temperature on these days was lower than the temperature on January 28, 1964, a day for which the Contracting Officer allowed plaintiff an extension due to the cold weather.
The proper scope of review in this case is fully set out in Crown Coat Front Co. v. United States, 386 U.S. 503, 512-513, 87 S.Ct. 1177, 1182-1183, 18 L.Ed. 2d 256 (1967), where it was stated:
"Even when the contractual scheme has run its course and the contractor is free to file his suit in court, he is *922 not entitled to demand a de novo determination of his claim for an equitable adjustment. The evidence in support of his case must have been presented administratively and the record there made will be the record before the reviewing court. United States v. Carlo Bianchi & Co., 373 U.S. 709 [83 S.Ct. 1409, 10 L.Ed.2d 652]; United States v. Utah Construction Co., 384 U.S. 394 [86 S.Ct. 1545, 16 L.Ed.2d 642]. The court performs principally a reviewing function. Only if it is alleged and proved that the administrative determination was arbitrary, capricious, or not supported by substantial evidence may the court refuse to honor it. This much is clear not only from the disputes clause itself but from the Wunderlich Act."
Based on this decision, this Court has only considered the administrative record (the affidavit submitted by plaintiff refers to specific parts of the administrative record).
An administrative determination is arbitrary and capricious if it has no rational basis. Bicknell v. United States, 422 F.2d 1055 (1970).
On a determination that defendant's determination was arbitrary, capricious, or not supported by substantial evidence, this Court may grant plaintiff the relief requested if there is a sufficient basis in the administrative record. United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).
The determination by the Board of Contract Appeals that the delay in the start of the project due to late approval of plaintiff's materials list and certificates was the fault of plaintiff and not defendant is supported by substantial evidence and is not arbitrary and capricious.
This Court can find no rational basis for the action of defendant in assessing delays caused by the weather on a workday basis while granting extensions on a calendar day basis when, on a delay caused by changes in specifications, defendant both assessed the delay and granted the extension on a calendar day basis. As a matter of law, therefore, this action by defendant was arbitrary and capricious.
The finding of fact on which defendant based the granting of an extension due to the weather during December was not supported by any evidence. The local climatological data shows that the finding of fact was incorrect. Using the standards by which defendant granted extensions for delays caused by the weather during other months, plaintiff was entitled to an extension of more than the ten days allowed.
Based on the local climatological data, plaintiff should have been granted an extension for the days of December 7th through December 31st, with the exception of December 28th, a total of twenty-four days, instead of ten days. Plaintiff should also have been granted an extension for those Saturdays and Sundays which it indicated in its requests for extensions that work was impossible if the local climatological data confirmed plaintiff's contention. These days were January 11, 12, 18 and 19, February 9 and 16, and April 4, 5, 18, 19, 25 and 26. Therefore, plaintiff is entitled to an additional twenty-six days' extension. Instead of liquidated damages being assessed for fifty-eight days, liquidated damages should only have been assessed for thirty-two days.
It is unclear from the record whether defendant has retained a balance of $2,500.00 or of $2,320.00 from the contract price. Defendant is, therefore, ordered to pay the remaining balance due on the contract, with the exception of $1,280.00 liquidated damages, for thirty-two days at $40.00 per day.
Under 28 U.S.C. § 2412, plaintiff may be awarded costs but not attorneys fees. Under 28 U.S.C. § 2411, plaintiff is only entitled to interest from the date of judgment at the rate of four percent per annum.
Accordingly, plaintiff's motion for summary judgment is sustained to the *923 extent of the balance due under Contract No. GS-06B-8311, less $1,280.00. Defendant's motion for summary judgment is denied with the exception of the balance due on the contract less $1,280.00.