EDITH P. JOYNER v. REESE B. JOYNER.

(Filed 17 March, 1965.)

**1. Husband and Wife § 12—**

The resumption of the marital relationship revokes the executory provisions of a prior deed of separation but does not affect those provisions which have been executed, and cannot give to the wife the right to recover personal property transferred to the husband pursuant to the deed of separation or the right to recover damages for its retention, there being no allegation or proof that the husband withheld any property which had been allocated to her or that subsequent to its execution he had transferred or agreed to transfer any interest to her in that portion allotted to him in the division.

**2. Same—**

Where the wife has conveyed her interest in land to her husband pursuant to a deed of separation executed in accordance with G.S. 52-12, the action of the husband in tearing up the papers subsequent to a reconciliation does not affect the title.

**3. Cancellation and Rescission of Instruments §§ 3, 10— Evidence held insufficient for jury in this action to rescind deed for duress.**

Plaintiff wife alleged that she signed the conveyance in question pursuant to a deed of separation because of duress exercised by defendant husband in threatening that she could have no further association with their son and that he would have her committed to a mental hospital if she failed to sign the deed. Plaintiff's evidence disclosed that prior to the execution of the deed of separation defendant attempted to take her to a psychiatrist but made no further efforts in this regard after his initial failure, that plaintiff's lawyer prepared the separation agreement and the deed pursuant thereto, that the separation agreement gave defendant full custody and

control of the child of the marriage except during school vacations, that plaintiff signed the agreement upon her lawyer's advice with full understanding, and that the certifying officer fully complied with G.S. 52-12. *Held:* The evidence is insufficient to establish a *prima facie* case for rescission on the ground of fraud, duress or undue influence.

APPEAL by plaintiff from *Bone, E. J.,* December 1964 Civil Term of NASH.

Plaintiff wife instituted this action against defendant husband to set aside a deed of separation and a deed to realty executed pursuant to its terms, and to have it adjudicated that she is the owner of one-half of all personal property which defendant had acquired before and after the marriage of the parties, including defendant's mercantile business; and to recover $5,000 as damages for defendant's wrongful withholding of her share of the property from her.

Plaintiff alleges: She and defendant were married on November 20, 1949, at which time defendant owned the tract of land described in the deed which she attacks. On it he operated "a country store." Soon after the marriage plaintiff and defendant agreed that they would pool their efforts, property, and money and that each would own a one-half interest in all the assets which the other then held or thereafter acquired. In addition to performing her household duties, at intervals plaintiff worked in mills in Rocky Mount. She turned over all of her wages to defendant, who deposited them in a bank account in his name only. When plaintiff was not otherwise gainfully employed, she worked in defendant's store. One son was born to the parties. On March 17, 1960, defendant conveyed the realty, title to which had been in his name alone, to himself and plaintiff and thereby created an estate by the entireties. On October 16, 1960, plaintiff and defendant separated. On November 25, 1960, they executed a deed of separation, and, as a part of the transaction, plaintiff conveyed to defendant all her interest in the property which they then held as tenants by the entireties. These deeds were without consideration, and defendant procured them "by fraud, duress, and undue influence and oppression" in that he represented to plaintiff: (1) that "the paper would protect her rights and give her an opportunity to see her son and did not affect her property rights"; (2) that if she did not sign, she could have no association whatever with her son and she would never get any part of the property; (3) that defendant would have plaintiff committed to a mental hospital if she did not sign; (4) that defendant assaulted, cursed, and so abused plaintiff that she feared for her safety and that of the child. On December 23, 1960, plaintiff and defendant resumed marital relations.

Plaintiff alleges — conclusions of law — that the resumption of marital relations made her, once again, a tenant by the entireties in the realty which she had conveyed to defendant and also gave her title to one-half of all defendant's personal property. She prays that a receiver be appointed to take possession of all defendant's property, real and personal, until the final determination of this action.

Plaintiff's evidence is sufficient to establish these facts: She married defendant when she was sixteen, and her education was "six weeks in the eighth grade." From 1949 until 1960 she worked more or less regularly in various mills in Rocky Mount and earned an unknown amount of money, in excess of $11,000.00, all of which she turned over to defendant pursuant to their agreement that they were "putting their money together, building for the future." Prior to 1960 they remodeled the store and built two dwellings on the property. In 1960 plaintiff told defendant that she no longer loved him and could not stand to live with him. This pronouncement took defendant by surprise, and he concluded from it that plaintiff was crazy and should see a psychiatrist. When he forcibly attempted to take her to see one, she "wrung away" from him and went to her mother's. Thereafter, defendant refused her permission to see their son unless she came "without her people," and he told her that no judge would ever give her custody of the child. "Based upon that statement," she employed an attorney, Mr. Milton P. Fields, to represent her. At her instance, Mr. Fields drew up a deed of separation, and the parties signed it in his office on November 25, 1960. Plaintiff then went to the office of Mr. James T. Buffaloe, a justice of the peace, who, in compliance with G.S. 52-12, privately examined her, separate and apart from her husband. He certified that it appeared to his satisfaction that plaintiff understood the contents of the deed of separation; that it was not unreasonable or injurious to her; and that plaintiff had stated to him that she signed the instrument freely and voluntarily and without fear or compulsion of any person. Contemporaneously with the execution of the deed of separation, plaintiff executed and delivered to defendant a warranty deed conveying to him all her interest in the realty which they owned as tenants by the entireties. This deed, however, was not acknowledged as required by G.S. 52-12. On December 6, 1960, Mr. Fields notified plaintiff of this omission. She then went to Mr. Buffaloe's office and executed a quit-claim deed to defendant for the same property described in her warranty deed of November 25, 1960. This latter deed was acknowledged as required by the statute.

In brief summary, by the deed of separation each party released the other from all obligations arising out of the marriage and each agreed not to molest the other. Plaintiff relinquished to defendant the "full

custody and control of the son of the parties" except for specified intervals during school vacations when the boy was to reside with plaintiff at her expense. The agreement recited that the parties had divided all their personal property between them "to their mutual satisfaction" and that neither party would make any claim to any items then in the control and possession of the other. It also set forth that plaintiff had conveyed to defendant all the real property which they had owned together, and each was empowered thereafter to convey real estate without the joinder of the other.

Plaintiff testified that she fully understood the provisions of the instrument she signed. She agreed to them, she said, because that was the only way she could get to see her son. At the time plaintiff signed the deeds defendant paid her $1,500.00. With this money she bought a Renault Spanelle. About December 23, 1960, plaintiff went back to defendant, and he tore up the deed of separation. He told her that whenever she was ready she "could go back down" and have the real property "put back like it was before," but plaintiff did not do so. Defendant executed no deed reconveying the property to her.

Plaintiff continued to work in Rocky Mount, and when she had accumulated $1,500.00 she returned that sum to defendant. In about six or eight months plaintiff and defendant again separated. After an interval they again resumed cohabitation, but the following month they separated finally. Plaintiff then instituted an action for alimony without divorce against defendant. When that suit was tried, the jury answered the issues against plaintiff.

On November 30, 1962, plaintiff brought this action. At the conclusion of her evidence defendant's motion for nonsuit was allowed, and plaintiff appeals.

*Narron, Holdford & Holdford for plaintiff.*
*Harold D. Cooley and Vernon F. Daughtridge for defendant.*

SHARP, J. This is not an action by a wife to recover funds which her husband received from her as a result of the confidential relation existing between them. See *Fulp v. Fulp, ante* 20, 140 S.E. 2d 708. Rather, in this action plaintiff seeks to set aside on grounds of duress a conveyance of realty and a deed of separation, and to recover damages for the detention of personal property transferred pursuant to its property-settlement provisions.

Insofar as the provisions of the deed of separation remained unperformed, any action to set it aside was superfluous.

"It is well established in this jurisdiction that where a husband and wife enter into a separation agreement and thereafter become reconciled and renew their marital relations, the agreement is terminated for every purpose in so far as it remains executory . . . Even so, a reconciliation and resumption of marital relations by the parties to a separation agreement would not revoke or invalidate a duly executed deed of conveyance in a property settlement between the parties." *Jones v. Lewis,* 243 N.C. 259, 261, 90 S.E. 2d 547, 549; *accord,* 2 Lee, North Carolina Family Law § 200 (3d Ed., 1963).

A reconveyance of the land would have been necessary to change the title to the realty plaintiff had conveyed to defendant. It could not be done by parol or by tearing up the papers.

Likewise, the resumption of marital relations would not invalidate the parties' division of their personal property, and evidence that defendant "tore up" the separation papers and "threw them in the trash box," without more, does not establish a new contract affecting the parties' individual personalty. Plaintiff has no pleading and no proof either that defendant withheld from her any personal property which had been allotted to her at the time the separation agreement was entered into, or that defendant subsequently transferred, or agreed to transfer, to her any interest in the personalty which was allotted to him in the division. With neither allegation nor proof to support her claim to an undivided interest in the personalty described in the complaint, plaintiff has no right to recover it, and *a fortiori,* no case for damages, 18 Am. Jur. 2d, Conversion §§ 53, 144, 156 (1965).

Plaintiff has failed, also, to establish the allegation that her execution of the deed of separation of November 25, 1960, and that of the quitclaim deed of December 6, 1960, were involuntary.

"Duress exists where one, by the unlawful act of another, is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will . . . Duress is commonly said to be of the person where it is manifested by imprisonment, or by threats, or by an exhibition of force which apparently cannot be resisted. Or it may be of the goods, when one is obliged to submit to an illegal exaction in order to obtain possession of his goods and chattels from one who has wrongfully taken them into possession." *Smithwick v. Whitley,* 152 N.C. 369, 371, 67 S.E. 913, 914.

Plaintiff successfully resisted defendant's attempt to take her to a psychiatrist when she broke his hold on her wrist and went to the home

of her mother. Defendant did not repeat the attempt. If there were other "assaults" and abuses which caused plaintiff to fear for her safety, the evidence does not disclose them. Upon defendant's telling her that no judge would ever award her the custody of their son, plaintiff did not accept defendant's "legal opinion" on this matter. As a result of what he said, she sought the advice of a lawyer who, her present attorney concedes, is competent and learned in the law. From then on the parties dealt with each other at arm's length, and plaintiff negotiated with defendant only through her counsel. Upon his advice she signed the agreement which, she says, she fully understood and which gave defendant full custody and control of the child except during school vacations. It would be odd indeed if plaintiff, as her present counsel now asserts, relinquished the custody of her son in the hope of obtaining it.

The deeds in question here were prepared by plaintiff's counsel, and the record is barren of any evidence that defendant ever made to plaintiff *any* representation, true or false, with reference to the contents or legal effect of either instrument. Upon being advised that the deed of conveyance of November 25, 1960, had not been properly acknowledged, plaintiff voluntarily, and without having seen or talked with her husband, so far as the record discloses, eleven days later went to the office of the justice of the peace, where she properly executed and acknowledged another conveyance of the same property.

When the wife employs an attorney and, through him, deals with her husband as an adversary, the confidential relationship between husband and wife no longer exists, 17A Am. Jur., Divorce and Separation § 898 (1957); 42 C.J.S., Husband and Wife § 593b (1944); and no presumption arises that the husband has exercised a dominant influence over the wife during such negotiations. The presence of able counsel for the wife at the conferences resulting in a separation agreement, and at the time she executes and acknowledges a deed of separation, "negatives the inference or contention that she was incompetent to·understand the arrangement, and was ignorant of its terms and did not know what she was doing," *Matthews v. Matthews,* 24 Tenn. App. 580, 592, 148 S.W. 2d 3, 11; *accord, Rendlen v. Rendlen,* Mo., 367 S.W. 2d 596; See *Hughes v. Leonard,* 66 Colo. 500, 181 Pac. 200; *Sande v. Sande,* 83 Idaho 233, 360 P. 2d 998; 1 Nelson, Divorce and Annulment § 13.21 (2d Ed., 1945). "The courts will subject the wife's claim of fraud, duress, or undue influence to a far more searching scrutiny where she was represented by counsel in the making of the agreement and throughout the negotiations leading up to its execution." Lindey, Separation Agreements § 28.IX (1937 Ed.).

BOURNE *v.* LAY & CO.

Notwithstanding that a wife is represented by counsel, G.S. 52-12 requires the officer before whom she acknowledges a contract of separation or a deed to her husband to include in his certificate "his conclusions and findings of fact as to whether or not said contract is unreasonable or injurious to the wife." In taking the acknowledgment to the deeds under attack here, the certifying officer fully complied with G.S. 52-12. His certificate is conclusive unless "impeached for fraud as other judgments may be." Duress and undue influence are both a species of fraud. *Little v. Bank,* 187 N.C. 1, 121 S.E. 185. Plaintiff's evidence fails to make out a *prima facie* case for rescission on the grounds

The judgment of nonsuit was properly entered.

of fraud, duress, or undue influence.

Affirmed.