WOOD-HOPKINS CONTRACTING COMPANY, A CORPORATION v. NORTH CAROLINA STATE PORTS AUTHORITY

No. 45

(Filed 25 February 1974)

1. Contracts § 12— interpretation of contract

In case of disputed items in a contract, the interpretation of the contract will be inclined against the person who drafted it.

2. Contracts § 12— interpretation of contract

When general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specific.

3. **Contracts § 27— construction of contract — lump sum or unit price**

In an action to recover an amount allegedly due for installing fill in the performance of a contract for improvement of defendant's port facilities, the trial court properly found that plaintiff's compensation for all work performed under the contract was not limited to the lump sum stated in the contract and that plaintiff was entitled to compensation for the fill on a unit price basis where the contract contained a provision that fill would be paid for at the rate of $2.00 per cubic yard and defendant's engineer, who prepared the contract, testified that such provision was placed in the contract with the expectation that an adjustment would be made when the material was in place.

4. **Contracts § 27— construction of contract — responsibility for extra fill**

Contract provision making plaintiff contractor responsible for "slides, washouts, settlement, subsidence, or any mishap to the work while under construction" did not require plaintiff to install fill at his own expense in a void created outside the contract line by action of the river in carrying riverbed material into the deep channel which had been dredged.

APPEAL by defendant from *Rouse, J.,* April 5, 1973 Special Session, NEW HANOVER Superior Court. This case was docketed and argued at the Fall Term 1973 as No. 91.

The plaintiff, a Florida corporation, instituted this civil action for breach of contract against the North Carolina State Ports Authority, a State agency created by Article 22, Chapter 143, General Statutes of North Carolina.

Prior to the institution of the action, the plaintiff submitted to the North Carolina Department of Administration a claim against the defendant for $108,880.00 due by contract for installing fill as a part of the defendant's improvement project at the North Dock extension of its Wilmington Port Terminal. The Director of the Department of Administration denied the claim. The plaintiff instituted the action in the Superior Court of New Hanover County where the contract was performed.

The complaint alleged the plaintiff had installed 54,440 cubic yards of underwater fill for which the defendant had agreed to pay $2.00 per cubic yard, and had breached its contract by refusing to pay the claim.

The defendant, by answer, set up these defenses: (1) That the contract required the plaintiff to perform all work shown on its plans and specifications at a fixed amount of $3,392,149.00. (2) That the contract was a lump sum contract and not a fixed unit contract. (3) That while the contract provided for a price

of $2.00 per cubic yard, the provision was included in the contract to be used to compute payment in the event extra work was ordered and approved. (4) That the work for which the plaintiff seeks payment was made necessary by plaintiff's failure to exercise proper care and the extra fill was not authorized. (5) That the fill was installed beyond the lines called for in the contract. In the alternative, the failure to meet the contract lines resulted from a sloughing of the river bank which was the responsibility of the plaintiff. (6) That the contract in Paragraph 5, Section 2A, Plans and Specifications, provided: "The Contractor shall be responsible for slides, washouts, settlement, subsidence, or any mishap to the work while under construction. He shall be responsible for the stability of all embankments constructed under this specification and shall replace any portion which may become displaced from any cause before completion and acceptance . . . . "

At a pre-trial conference many exhibits were identified and introduced and many stipulations were entered into before the trial judge. It was stipulated the contract between the parties grew out of an advertisement for bids according to plans and specifications prepared by the defendant, giving the *type, amount,* and details of the work to be done and the materials to be furnished. The plaintiff filed its bid which the defendant accepted. Among the stipulations were the following:

> "(4) A part of the general contract entails certain dredging and fill work [including blueprints and specifications] . . . . "

The contract defined fill as:

> "[S]and containing not more than 20% of material passing a No. 200 sieve, after passing through the dredge and to the stockpile. . . . [F]ill material shall be allowed to drain and dry prior to final placing . . . . The first layer shall be approximately 18" thick . . . . Subsequent layers shall be lifts of 12 inches or less, and compacted to obtain 95% Standard Proctor dry density." (Section 2A, Paragraph 7)

The contract provided:

> " 'Fill' shall be paid for on a cubic yard basis in place as determined by before and after surveys." (Section 2A, Paragraph 10b)

"(6) During the progress of the work and subsequent thereto, Wood-Hopkins Contracting Company has been paid $3,425,619.09 and this constitutes payment in full for all work performed under the contract, except payment for 54,440 cubic yards of fill placed outside of the plan line."

The evidence disclosed that after the channel was dredged to the required depth (apparently 28 feet) the water carried movable material from the outside into the channel thus creating a void. This void required fill in order to stabilize the bed of the river in this critical position.

The parties further stipulated:

"(14) On August 21, 1971, soundings were taken by representatives of Wood-Hopkins Contracting Company, the North Carolina State Ports Authority, and Register and Cummings, Engineers. The soundings indicated that additional dredging needed to be done as the depth required by the contract had not been reached at some stations.

"(15) Dredging was continued and final soundings were taken on or about August 23, 1971, and indicated that the required contract depth had been obtained.

"(16) These soundings were subsequently plotted by Wood-Hopkins Contracting Company and the results were given to Register and Cummings, Engineers, and these disclosed that a void had been established behind the plan line."

The parties agreed that the void which was outside the line established by the survey made in the planning stage required fill of the same type as required for in-line fill. The defendant does not contend that more fill was pressed in place beyond the plan line than was required.

At the conclusion of the hearing the court made numerous findings, among them:

"31. The amount of fill required to fill the area between the ground line as established by the after dredge and before fill survey and the ground line as established by the after fill survey was 311,613 cubic yards. Plaintiff has been paid for only 257,173 cubic yards of fill and has not been paid for the difference of 54,440 cubic yards."

The court concluded that it was the contractor's obligation (under Paragraph 5, Section 2A) to be responsible for slides, washouts, settlement, subsidence, or mishap and required the contractor to redredge the channel at his own expense, but that Paragraph 5, Section 2A, did not require the contractor to install at his own expense any fill. The agreement was to prepare and keep clear the channel in condition to receive the fill. The court concluded the provisions of Section 2A, Paragraph 5, of the contract did not require the plaintiff to install or replace any fill at his own expense. The court stated:

"1. The clear meaning of Section 2A, Paragraph 10 (b) of the contract, ' "Fill" shall be paid for on a cubic yard basis in place as determined by before and after surveys,' is that plaintiff is entitled to be paid for the amount of 'fill' between the ground line as established by the survey taken after the dredging had been completed and before the fill operation was begun, and the ground line as established by the survey taken after the fill operation had been completed, or a total of 311,613 cubic yards of fill. As the plaintiff has been paid for only 257,173 cubic yards of fill, the plaintiff is entitled to be paid for an additional 54,440 cubic yards at the contract rate of $2.00 per cubic yard."

The court entered judgment that the plaintiff recover $108,-880.00 with interest at 6% from December 13, 1971.

The defendant excepted to the judgment, gave notice of appeal, and immediately filed with this Court a petition that the case be certified here for initial review. The petition was allowed on October 2, 1973.

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston by: Joseph W. Grier, Jr., and William L. Rikard, Jr., for plaintiff appellee.*

*Robert Morgan, Attorney General, by: Edwin M. Speas, Jr., Assistant Attorney General, for defendant appellant.*

HIGGINS, Justice.

The defendant first challenged the plaintiff's right to recover in this action on the ground the contract required the plaintiff to perform labor, furnish materials, and complete its obligation under the contract for the fixed lump sum stated in the contract.

The parties stipulated that the plaintiff filed a base bid of $2,947,417.00 and $350,330.00 and $94,402.00 for certain alternative proposals. The contract specifically provided for a unit price for certain items of construction. These items included a provision of $2.00 per cubic yard for underwater fill compressed in place as base support for pilings designed to support the above-water unloading facilities. The plaintiff claimed pay at the rate of $2.00 per cubic yard for 54,440 cubic yards of fill. The defendant denied the claim on the ground that the entire work was covered by the amount bid which was a lump sum contract provision.

It is admitted that the defendant's engineers, chief of whom was Mr. Joseph R. Gordon, prepared the plans and specifications and, after the plaintiff's bid was accepted, drew the contract which specifically stated that fill should be paid for at the rate of $2.00 per cubic yard. The engineer first testified that the purpose of inserting the price per unit was, "To be fair to the contractor we wanted to give him an adjustment for the work he actually performed. So, if the river bottom changed from the time of the survey until the time he began work, that would be one reason the unit prices were included. That actually happened. That was the primary reason. . . . The second reason was that there was some money held back at the time of the letting of the contract that the Ports Authority intended to spend along the end and the unit price would be used to negotiate additional changes for which a change order would have been written. These unit prices are also included to cover extra work that might need to be done. They form the basis of negotiating the change order for the extra work." But in the pinch Mr. Gordon testified:

"Q The fact is, Mr. Gordon, that these figures were put in simply for the contractor's guidance with the expectation that when the material was in place there would be an adjustment?

"A This was the best figure we had, yes, sir, and we did expect to adjust them on the basis of what was actually done."

The foregoing does not support a lump sum claim for all work. The very fact that a specific price was inserted for fill negates a lump sum claim.

[1]   The specifications were drawn by Mr. Gordon, the defendant's engineer. It is a rule of contracts that in case of disputed items, the interpretation of the contract will be inclined against the person who drafted it. *Yates v. Brown,* 275 N.C. 634, 170 S.E. 2d 477; *Root v. Insurance Co.,* 272 N.C. 580, 158 S.E. 2d 829; *Lester Bros., Inc. v. Thompson Co.,* 261 N.C. 210, 134 S.E. 2d 372; *Trust Co. v. Medford,* 258 N.C. 146, 128 S.E. 2d 141.

[2]   Another rule of law which supports the plaintiff's claim is that when general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics. Authorities are listed in Am. Jur. 2d, Vol. 17, Contracts, Section 270.

[3]   The court was correct in holding the unit per cubic yard price of fill rather than the lump sum contention prevails. The above question was argued in the defendant's brief, but the defendant's position is shaded and weakened, if not eliminated, by a stipulation entered at the final hearing.

"(9)  The soundings taken after completion of the dredging showed a void beyond the plan line, and there is no dispute as to the amount of additional fill required to fill this area and to complete the contract."

The dispute is reduced to the question whether the plaintiff is entitled to receive payment for the fill placed behind the plan line.

[4]   In addition to the general denial and the lump sum claim, the defendant has set up these further defenses: The extra fill was caused by plaintiff's negligence in dredging behind the plan line or, in the alternative, "[P]laintiff's failure to meet the contract lines resulted from sloughing of the riverbank." The defendant attempts to support the contention by Paragraph 5, Section 2A of the contract. "The contractor shall be responsible for slides, washouts, settlement, subsidence, or any mishap to the work while under construction. He shall be responsible for the stability of all embankments constructed under this specification and shall replace any portion which may become displaced from any cause before completion and acceptance . . . . "

According to the testimony, the void behind the plan line was caused by the action of the river in carrying the riverbed material into the deep channel which had been dredged up to the plan lines. Of course when the material was washed into

the dredged channel, it was the obligation of the plaintiff to remove that material. This it did without charge. The material which had washed into the channel left the void beyond the channel line which required the fill. Nothing in Paragraph 5, Section 2A, required the plaintiff to do anything except remove obstructions. Nothing required it to compress fill in place except for the unit price provided in the contract.

The court found from the evidence, "The void area behind the plan line was not caused by over-dredging." The unstable condition of the riverbed is shown by this stipulation of the parties: "[T]he area in which the work was performed had in past time been rice fields."

The plaintiff, recognizing its responsibility for slides, etc., redredged the channel and inserted 54,440 cubic yards of fill which was required "to complete the work."

The evidence disclosed that all dredging was done and all fill compressed in place under the watchful eye of the defendant's engineer. During the progress of the work, the plaintiff, as provided in the contract, filed claims for partial advances which were approved by the engineer and paid by the defendant without objection. Never at any time prior to the acceptance of the finished job, did the defendant make any objection or raise any question with respect to that part of the fill which is the subject of the present dispute.

The trial court's findings of fact are supported by the evidence. In a case of this character, the judge's findings have the same force as a jury verdict. G.S. 143-135.3 provides that a suit against a State agency for a breach of contract shall be tried in the Superior Court of Wake County or in the jurisdiction of the court in which the work was done, *without a jury. Harrison Associates v. State Ports Authority,* 280 N.C. 251, 185 S.E. 2d 793. In a trial before a judge, technical objections to the admissibility of evidence will not be observed. Prejudicial results must be shown or it may be deemed the court in its findings considered only competent evidence. *General Metals v. Manufacturing Co.,* 259 N.C. 709, 131 S.E. 2d 360; *Construction Co. v. Crain and Denbo, Inc.,* 256 N.C. 110, 123 S.E. 2d 590; *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668.

The court's findings of fact are amply supported by evidence and the findings support the judgment.

Affirmed.