JAMES B. ADDER v. HOLMAN & MOODY, INCORPORATED

No. 26

(Filed 5 November 1975)

1. **Mechanics' Liens § 1— relinquishment of possession of car — voluntariness — worthless check**
   Defendant's claim of lien under G.S. 44A-2(d) for work done on plaintiff's car was not extinguished when plaintiff obtained possession of the car by giving defendant a worthless check since the car was not "voluntarily" relinquished by defendant within the meaning of G.S. 44A-3.

2. **Duress— regaining possession of car — signing note and release — duress of goods**
   Where defendant rebuilt plaintiff's car into a dragstrip racer, plaintiff acquired possession of the car by giving defendant a worthless check for the balance due, the engine thereafter blew up, plaintiff returned the car to defendant's place of business, and defendant refused to allow plaintiff to regain possession of the car until he signed a purported release from liability and a promissory note for the bal-

Adder v. Holman & Moody, Inc.

ance due for the original work on the car, the release and note were not obtained by duress of goods since defendant did not wrongfully hold the car because it still had a lien on the vehicle for the original work, and since there was no showing that plaintiff was not on an equal footing with defendant.

**3. Torts § 7— release defined**

A release is the giving up or abandoning of a claim or right to the person against whom the claim exists or the right is to be exercised.

**4. Waiver § 2— waiver defined**

A waiver is a voluntary and intentional relinquishment of a known right or benefit.

**5. Contracts § 12— construction of contracts**

The heart of a contract is the intention of the parties, and that intention must be determined from the language of the contract, the purposes of the contract, the subject matter and the situation of the parties at the time the contract is executed.

**6. Torts § 7— agreement not release from liability**

An agreement acknowledging plaintiff's indebtedness to defendant for the balance due for work performed in rebuilding plaintiff's car and stating that plaintiff has "no defenses or set-offs against such indebtedness grounded upon poor workmanship or other objections" did not constitute a release of plaintiff's claims against defendant based on negligence and breach of implied warranty in rebuilding the car, the language of the agreement being restricted to a defense or a set-off in the event defendant resorted to a suit on a contemporaneously executed note for the balance due.

Chief Justice SHARP dissenting.

Justice COPELAND joins in the dissenting opinion.

APPEAL as of right by defendant pursuant to G.S. 7A-30 (2) to review decision of the Court of Appeals reported in 25 N.C. App. 588, 214 S.E. 2d 227 (opinion by *Martin, Judge,* with *Brock, Chief Judge,* concurring and *Vaughn, Judge,* dissenting), reversing judgment of *McConnell, J.,* 9 September 1974 Session of DAVIDSON Superior Court.

Plaintiff instituted action to recover damages for injuries allegedly resulting from defendant's negligence and breach of implied warranty in rebuilding plaintiff's 1971 Maverick automobile. Defendant answered denying the material allegations of the complaint and affirmatively alleging a release by plaintiff. Defendant also counterclaimed for recovery on a promissory note allegedly executed by plaintiff in the amount of $1,538.03. Plaintiff by way of reply asserted that defendant unlawfully

held his automobile and that he signed the note and another paper writing under duress. The case came on for trial before Judge McConnell, sitting without a jury. By consent Judge McConnell directed that the issue of damage growing out of the actions based on negligence and warranty be tried at a later date.

Plaintiff offered evidence tending to show that he contracted with defendant to rebuild his 1971 Maverick automobile into a drag strip racer. Upon completion of the work, plaintiff borrowed $2,500 from a bank upon defendant's endorsement which was paid to defendant on the amount due for its work. At this time, including the $2,500 borrowed, plaintiff had paid to defendant approximately $10,000. Upon delivery of the automobile, plaintiff gave defendant a check in the amount of $1,538.03, representing balance due to defendant for the rebuilding of plaintiff's automobile. The check was not honored because of insufficient funds in plaintiff's account. Several weeks later and after the Maverick automobile had made "one run" the engine "blew" as plaintiff warmed it up for a race. He took the automobile back to defendant and requested that defendant see what was wrong. Several weeks later he attempted to get his automobile and he was told it would not be released until he paid the balance due, including the amount due on the note which defendant had endorsed. Plaintiff consulted an attorney and pursuant to a telephone discussion between his attorney and defendant's attorney, plaintiff returned to defendant's establishment with a certified check in the amount of $2,500 to pay off the note endorsed by defendant. It was plaintiff's understanding that his automobile would be released and that he and defendant would discuss and work out the remaining $1,538.03 due to defendant. At this time defendant refused to deliver the automobile unless arrangements were made to pay the $1,538.03. Plaintiff agreed to pay the balance within a few weeks. Defendant then contacted its attorney and thereafter prepared two instruments, defendant's Exhibits "A" and "B," which plaintiff read and signed. As a part of this transaction, he also delivered to defendant the check in the amount of $2,500. Plaintiff testified that he did not contact his attorney because his attorney was in court on that day. He further stated that he read the instruments and knew what he was signing. In explanation of his actions he testified:

> . . . I wanted the car because it had been sitting there a good while and I needed it. I had $10,000.00 tied up in it.

I couldn't see losing it for $1500.00 or a signature. I had to have the car, so I signed the release and came back. I gave them the $2500.00. (Objection overruled.) The only way I could get the car was to sign it—I was really forced into it. I was over a barrel because I had a $10,000.00 car sitting there. I needed it; I just felt that was the only way I was going to get the car. . . .

The instruments which plaintiff signed are as follows:

EXHIBIT A

> A & W Radiator Service
> 501 South Main Street
> Lexington, North Carolina

Holman Moody, Inc.
Post Office Box 27065
Charlotte, North Carolina 28208

Gentlemen:

This will acknowledge my indebtedness of $1,538.03 representing the balance due for labor and parts to finish my drag race car and that I have no defenses or set-offs against such indebtedness grounded upon poor workmanship or other objections.

In consideration for an extension of time until August 10, 1972, I agree to execute and deliver to you my promissory note in the amount of $1,538.03 and further agree that should I fail to pay by August 10, 1972, and you are required to turn this note over to an attorney for collection, I will pay reasonable attorney fees.

I further agree that in the event that you should undertake suit against me on the note, I will not plead any defenses against payment of same.

Signed: JAMES B. ADDER

EXHIBIT B

$1,538.03                                        July 21, 1972

For value received and with interest at 7% per annum from May 4, 1972, the undersigned promises to pay Holman and Moody, Inc.

One Thousand Five Hundred Thirty Eight and 03/100 Dollars

payable at Charlotte, North Carolina on or before August 10, 1972.

In the event the indebtedness evidenced hereby be collected through an attorney at law after maturity, the holder shall be entitled to collect reasonable attorney fees. Demand, presentment, protest, notice of protest and notice of dishonor waived by all parties bound hereon. In the event that payment of this note is made before August 10, 1972, the undersigned shall not be liable for payment of the interest provided for herein above.

Witness my hand and seal

JAMES B. ADDER (SEAL)

Address:
JAMES B. ADDER, A & W Radiator Serv.
501 South Main St., Lextington, N. C.

Due August 10, 1972

At the close of the testimony Judge McConnell ruled that the release was binding and that plaintiff was estopped from further action. Defendant thereupon moved for a directed verdict on its counterclaim and ruling on this motion was reserved. Judge McConnell filed judgment in the cause on 11 September 1974. After finding facts consistent with those therein set forth he, *inter alia,* further concluded and decreed:

IV. [That the execution of the release was supported by consideration passing from the defendant to the plaintiff in that the defendant extended time for the plaintiff to pay his indebtedness to the defendant, the defendant agreed to waive the interest if said indebtedness was paid before August 10, 1972 and the defendant released the plaintiff's automobile to the plaintiff.]

V. That the plaintiff admitted signing and delivering said promissory note in the amount of $1,538.03 to the defendant and admitted that such amount was the balance due on the contract.

VI. That there was no evidence of fraud or fraudulent misrepresentation on the part of the defendant in its procurement of the release which was signed by the plaintiff.

VII. That at the close of the evidence the defendant moved for judgment on its counterclaim.

Based upon the foregoing findings of fact

IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. [That the release which the defendant set up in his pleadings as an affirmative defense and as a plea in bar is valid and binding and defendant's plea in bar is sustained and the plaintiff's action is hereby dismissed.]

2. [That the defendant have and recover from the plaintiff on its counterclaim the sum of $1,538.03 together with interest on said sum at the rate of seven percent per annum from May 4, 1972 until the date of this judgment.]

3. That the costs of this action be taxed to the plaintiff.

THIS the 11th day of September, 1974.

> JOHN D. MCCONNELL
> Judge Presiding at the September Third 1974 Term of the Superior Court Division of the General Court of Justice of Davidson County, North Carolina

Plaintiff appealed.

*Wilson & Biesecker, by Roger S. Tripp and Joe E. Biesecker, for plaintiff appellant.*

*Grubb and Penry, by Robert L. Grubb, for defendant appellee.*

BRANCH, Justice.

The rationale of the opinion of the Court of Appeals is that defendant *wrongfully* held plaintiff's automobile and thereby obtained the execution of a note and "release" from him, by duress of goods. In reaching its decision, the majority of the panel relied on *Joyner v. Joyner,* 264 N.C. 27, 140 S.E. 2d 714, and *Smithwick v. Whitley,* 152 N.C. 369, 67 S.E. 913.

In *Smithwick* plaintiff offered evidence that he bought a certain parcel of land from defendant at an agreed price of $35 per acre and executed notes secured by a deed of trust for the purchase price; that defendant, in turn, executed a deed con-

Adder v. Holman & Moody, Inc.

veying the land to him and the deed was left with defendant for recording. Plaintiff went into possession of the land and began clearing it. Defendant denied that the sale was consummated or that the deed was left with him. The remaining evidence (apparently uncontradicted) shows that plaintiff went to defendant about the deed and defendant said that if plaintiff would pay him $50 per acre he would give him the deed. After considerable discussion, plaintiff agreed to pay the price demanded rather than lose the land which he had cleared, fenced and brought to tillable condition. Upon receiving the deed, plaintiff brought suit for $280, the alleged difference between the purchase price contracted for and that actually paid, contending that this difference was paid under duress. Upon intimation by the trial judge as to his intended charge, plaintiff submitted to a nonsuit and appealed. This Court in finding no error in the trial below stated:

> The payment of the $280 in order to get a deed for the land was voluntary. The plaintiff had a right to stand on his legal rights in the land, if he had any, and assert his equities in the courts of the State.

> Duress exists where one, by the unlawful act of another, is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will. 14 Cyc., 1123, and cases cited. *Bank v. Logan,* 99 Ga., 291; *Mathews v. Smith,* 67 N.C., 374; *Miller v. Miller,* 68 Pa. St., 486.

> Duress is commonly said to be of the person where it is manifested by imprisonment, or by threats, or by an exhibition of force which apparently cannot be resisted. Or it may be of the goods, when one is obliged to submit to an illegal exaction in order to obtain possession of his goods and chattels from one who has wrongfully taken them into possession. *Astley v. Reynolds,* 2 Strange, 915, is a leading case on this subject. *Hackley v. Hackley,* 45 Mich., 573.

> There is neither duress of the person nor goods here. The plaintiff was in actual possession of the land and the defendant denied his title, claiming that the "deal had not been consummated." In order to get a deed plaintiff acceded to defendant's demand and paid the advanced price. Upon all the authorities it was a voluntary payment, an adjustment of dispute. (Emphasis ours.)

The rule of law above stated was quoted with approval in the case of *Joyner v. Joyner, supra.* See also *Hartsville Oil Mill v. United States,* 271 U.S. 43, 70 L.Ed. 822, 46 S.Ct. 389; *Silliman v. United States,* 101 U.S. 465, 25 L.Ed. 987; *Rosenfeld v. Boston Mut. L. Ins. Co.,* 222 Mass. 284, 110 N.E. 304; *Goebel v. Linn,* 47 Mich. 489, 11 N.W. 284; *Hackley v. Headley,* 45 Mich. 569, 8 N.W. 511; *Cable v. Foley,* 45 Minn. 421, 47 N.W. 1135.

We are advertent to the cases collected in 70 A.L.R. p. 711, Annotation—Duress in Insisting upon Release Before Delivery of Property Where Parties are not on Equal Footing. These cases relate to wrongful withholding by persons in such relationship as trustee with *cestui que trust,* attorney with client, majority stockholder with minority stockholder and other fiduciary relationships. The property withheld in these cases was generally held without legal claim of right. In this context see also 25 Am. Jur. 2d, Duress and Undue Influence § 5, p. 360.

[1]  In instant case, before the automobile was originally delivered to plaintiff, defendant had a lien on the vehicle for the entire amount due to it for repairs and services pursuant to G.S. 44A-2(d) (1974). In order to obtain the vehicle, plaintiff gave defendant a check for the balance due. The check was returned uncashed because of insufficient funds. Under these circumstances, defendant's lien was not extinguished and the property was subject to redelivery to defendant through the remedy of claim and delivery. *Reich v. Triplett,* 199 N.C. 678, 155 S.E. 573; *Maxton Auto Co., Inc. v. E. S. Rudd,* 176 N.C. 497, 97 S.E. 477. The Court of Appeals reasoned that defendant had lost its claim of lien because of the provision in G.S. 44A-3 that "the reacquisition of property voluntarily relinquished shall not reinstate the lien." Under the circumstances above recounted, we do not think that the property was *voluntarily* relinquished by defendant when plaintiff obtained its delivery by giving to defendant a worthless check.

[2]  Plaintiff's automobile was not wrongfully taken into possession nor was it wrongfully held since defendant's lien under G.S. 44A-2(d) was not extinguished. Further there is no showing that plaintiff was not on equal footing with defendant. Rather this evidence discloses that plaintiff merely chose to enter into further negotiations with defendant without advice of his counsel who was temporarily in court. As a result of these negotiations, plaintiff acceded to defendant's requirements concerning

the balance due. Plaintiff stated that he knew what he was doing when he signed the written instruments. This was a voluntary adjustment of a dispute. The facts of this case place it squarely within the holding of *Smithwick v. Whitley, supra*. Thus the Court of Appeals erred in holding that the release was obtained by duress of goods; however, there remains the crucial question as to the effect of the execution of the note and the paper writing, defendant's Exhibit "A," referred to by the parties as a release.

[3, 4] A release is the giving up or abandoning of a claim or right to the person against whom the claim exists or the right is to be exercised. In order for there to be an immediate release, the instrument must contain words of present discharge. *State Ex. Rel. McClure v. Northrop*, 93 Conn. 558, 106 Atl. 504; 66 Am. Jur. 2d, Release § 28 at 704. A waiver is a voluntary and intentional relinquishment of a known right or benefit. It is usually a question of intent. *Green v. P.O.S. of A., Inc.*, 242 N.C. 78, 87 S.E. 2d 14. Whether this agreement be called a release, a waiver or be given some other designation is not important to our decision. Obviously defendant's Exhibit "A" is a contract and is therefore subject to the recognized rules of construction of contracts.

[5] The heart of a contract is the intention of the parties. The intention of the parties must be determined from the language of the contract, the purposes of the contract, the subject matter and the situation of the parties at the time the contract is executed. *Lane v. Scarborough*, 284 N.C. 407, 200 S.E. 2d 622; *State Highway Commission v. L. A. Reynolds Co.*, 272 N.C. 618, 159 S.E. 2d 198. Any ambiguity in a written contract is construed against the party who prepared the writing. *Wood-Hopkins Contracting Co. v. N. C. State Ports Authority*, 284 N.C. 732, 202 S.E. 2d 473; *Root v. Allstate Ins. Co.*, 272 N.C. 580, 158 S.E. 2d 829; *Wachovia Bank & Trust Co. v. Medford*, 258 N.C. 146, 128 S.E. 2d 141; *Salem Realty Co. v. Batson*, 256 N.C. 298, 123 S.E. 2d 744.

The only ambiguity in the contract before us is contained in the following paragraph of the contract:

> This will acknowledge my indebtedness of $1,538.03 representing the balance due for labor and parts to finish my drag race car and that I have no defenses or set-offs against such indebtedness grounded upon poor workmanship or other objections.

[6]   This language appears to be restricted to a *defense* or a *set-off* in the event defendant resorted to a suit on the contemporaneously executed note. The agreement reached by the attorneys for the parties was that the automobile was to be delivered to plaintiff when he delivered the certified check for $2,500. The sole objection interposed to this agreement by defendant was that there be arrangements made for the payment of the $1,538.03. Nowhere in the contract is there any reference to a release of plaintiff's pending claims based on negligence or implied warranty. Defendant prepared the contract after a telephone consultation with his lawyer and therefore any ambiguity in the contract must be resolved against defendant. Defendant could have easily used words of release to dispose of plaintiff's pending claims based on negligence and warranty had this been the intent of the parties. This it did not do. Therefore, upon consideration of the language of the contract, the apparent purpose of the contract and the situation of the parties at the time of its execution, we hold that the trial judge erred in dismissing plaintiff's action on the ground that there was a valid release operating as a plea in bar. We further hold that the trial judge correctly entered judgment on defendant's counterclaim in the amount of $1,538.03. All the evidence shows that plaintiff knowingly, understandingly and for a valuable consideration executed the note in the amount of $1,538.03 and that plaintiff had refused or neglected to pay the sum due on the note.

This cause is remanded to the Court of Appeals with direction that it be remanded to Davidson Superior Court with order that judgment be entered against plaintiff on defendant's counterclaim and that there be a new trial on plaintiff's causes of action based upon negligence and implied warranty.

For the reasons stated, the decision of the Court of Appeals is

Modified and affirmed.

Chief Justice SHARP dissenting.

I am in accord with the majority's decision (1) that on 21 July 1972 defendant had a mechanics' lien upon plaintiff's automobile for work done prior to 4 May 1972, and therefore the right to retain possession of it, until plaintiff paid the dishonored check of 4 May 1972 in the amount of $1,530.03; and

(2) that defendant did not obtain by duress of goods the contract and note which plaintiff executed on 21 July 1972 (introduced in evidence as Exhibits A and B respectively). I am also in accord with the statement in the majority opinion that when plaintiff signed the note and contract "[t]his was a voluntary adjudgment of a dispute." This dispute was whether .the automobile's mechanical failure, which plaintiff alleges developed in the car on a test run, was caused by defendant's negligent work in reconstructing the vehicle or by plaintiff's over-revving the engine thereafter.

My dissent is to the majority's holding that Exhibit A is not a release. Although the contract bears no label, plaintiff himself testified that it was a release and that defendant's representative told him before he signed it on July 21st that "the only way [he] could get the car that day was to sign a release that [he] wouldn't hold them responsible for anything. . . ." I can perceive no ambiguity in Exhibit A but, were it possible to construe one into it, the interpretation which the parties put on their contract would eliminate the ambiguity. Plaintiff says it was a release and his testimony establishes that defendant certainly regarded it as a release, given in consideration of its waiver of a valid lien on the automobile.

The record discloses no compelling reason why plaintiff had to have the automobile on July 21st. It had been sitting on defendant's lot "for a good while." Apparently on that day plaintiff just decided he wanted the car and defendant had had it long enough. He also seems to have been under the impression that defendant's lawyer had agreed with his lawyer that defendant would surrender possession of the car if plaintiff paid the bank note in the amount of $2,500.00, which defendant had endorsed for plaintiff and the proceeds of which paid a part of the bill plaintiff owed defendant. However, as plaintiff testified, when he tendered the certified check for $2,500.00 and demanded the car, defendant's representatives told him there was no way he could get the car that day without also paying the dishonored check in the amount of $1,530.03 unless he "went to the sheriff and got a court order making them release the automobile without payment of the money." However, after "they had called their lawyer," defendant's representatives agreed that he could get the car that day *if* he signed "a release that he wouldn't hold them responsible for anything" and executed a note for the $1,530.03.

---

Adder v. Holman & Moody, Inc.

---

On cross-examination plaintiff said, "It was my idea to sign the note for the money; the note for $1,500.00 I signed when I signed the release." Thereafter, on redirect examination, he said, "I did not suggest that I sign the note for $1,500.00." However, he never retracted his statement that he "read the release" and knew what he was signing. He also said he knew that his lawyer was not available to him on that day and he made no effort to contact him. In other words he deliberately went ahead on his own without the advice of his counsel, and made his own arrangements. In consideration of defendant's waiver of its lien, a twenty-day extension of time to pay the dishonored check in the amount of $1,530.03 (which he did not have on July 21st), and the waiver of all interest if the indebtedness was paid before August 10th, plaintiff acknowledged *that he had "no defense or set-off against such indebtedness grounded upon poor workmanship or other objections."* (Emphasis added.) Other objections could only have referred to the manner in which the car was rebuilt.

If defendant had first filed an action seeking to recover on its note plaintiff could have preserved his warranty claim only by pleading them in his answer. They would have been compulsory set-offs and counterclaims under G.S. 1A-1, Rule 13(a), since they arise out of the same transaction. However, as the majority correctly holds, by the execution of Exhibit A, plaintiff precluded himself from making any defense to the note grounded upon poor workmanship. As I see it he did that and more. He also renounced his claims against negligence and breach of warranty when he said in Exhibit A: "This will acknowledge by indebtedness of $1,530.03 representing the balance due for labor and parts to finish any drag race car and that I have no defenses or set-offs against such indebtedness grounded upon poor workmanship or other objections."

In the face of the foregoing acknowledgment—which we hold to be valid—and in the face of plaintiff's testimony that defendant's representative told him he couldn't get the car unless he signed "a release that [*he*] *wouldn't hold them responsible for anything,*" (emphasis added) how can we now hold that plaintiff has released his claims against defendant as a defense to its note but retained them to be used offensively as the basis for a separate cause of action against defendant? Such a holding, in my view, is impermissible and totally illogical.

My vote is to reverse the Court of Appeals and affirm the judgment of the Superior Court.

Justice COPELAND joins in this dissent.