**BANCBOSTON MORTGAGE CORPORATION,**
Plaintiff,

v.

**HARBOR ESTATES PARTNERSHIP, a North Carolina general partnership; Kenneth P. Dick; Linda K. Dick; David L. Graham; Kim C. Graham; Richard A. Stoops; and Elizabeth A. Stoops, Defendants.**

No. C–C–90–0252–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

July 8, 1991.

John T. Allred, B. David Carson, Petree Stockton & Robinson, Charlotte, N.C., for plaintiff.

Wayne P. Huckel, Kennedy Covington Lobdell & Hickman, Charlotte, N.C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on Plaintiff's renewed motion, filed May 15, 1991, for summary judgment. On June 13, 1991, Defendants filed a memorandum in opposition to the motion. Plaintiff, on June 27, 1991, filed a reply to Defendants' memorandum.

The dispute in this matter involves a loan made by a predecessor in interest of Plaintiff to Defendant Harbor Estates. Harbor Estates was a partnership comprised of Mark A. Maddalon, the managing general partner, and the three (3) individual male Defendants, dentists from Pennsylvania, whose primary role in the venture was to supply capital. The partnership was formed for the purpose of owning, operating and developing property located in Mecklenburg County, North Carolina. Mark A. Maddalon and his wife were originally Defendants in this action but were voluntarily dismissed after they filed a Chapter 7 Bankruptcy Proceeding.

The individual male Defendants along with their wives—the individual female Defendants—(hereinafter collectively referred to as "Guarantors" or "individual Defendants") are also guarantors of the loan made to Defendant Harbor Estates from Plaintiff. Defendant Harbor Estates failed to tender payments in the time required by the promissory note. On June 19, 1989, all Defendants executed a document labelled "Modification and Extension of the Loan Agreement, Note, Deed of Trust, and Consent of Guarantors" (hereinafter "Extension Agreement"). The result of this agreement was to extend the maturity date of the note for an additional year so that payment under the note became due on May 17, 1990. Paragraph 8 of the Extension Agreement provides:

Borrower and Guarantors do hereby acknowledge that the Note and Deed of Trust are valid and existing obligations of the Borrower and that Borrower and Guarantors have no defenses of any kind or nature whatsoever nor any setoffs or other counterclaims against Lender in connection with this loan transaction.

Despite the extension, Defendants failed to make the payments due under the promissory note by May 17, 1990.

On August 1, 1990, Plaintiff filed this action seeking to recover approximately $1,000,000.00 due under the note plus interest and attorney's fees from Defendant Harbor Estates and the individual Defendants as guarantors of that loan. Thereafter, Defendants filed an answer and amended answer pleading as defenses and counterclaims that Plaintiff violated the loan agreement by failing to inspect the construction site and to obtain hard copy invoices from sub-contractors prior to disbursing funds to Maddalon. Defendants claim that Plaintiff's actions constitute a breach of contract and a negligent breach of the duty of care owed to them. In its reply to Defendants' defenses and counterclaims, Plaintiff has raised several defenses.

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c) of the Federal Rules of Civil Procedure. The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. *Id.; Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see* F.R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's

pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). When considering motions for summary judgment, courts must view facts and inferences from the facts in light most favorable to the party opposing the motion for summary judgment. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. at 1356–57; *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational factfinder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

■ The Court believes the resolution of the motion currently before it depends on the determination of a single legal issue—did Defendants exercise a valid waiver or release of their right to plead defenses, counterclaims, or setoffs to Plaintiff's complaint?[1] The loan agreement provides that the agreement is governed by North Carolina law. Hence, the modification and extension of that agreement which contains the waiver provisions is also governed by North Carolina law.

■ Under North Carolina law, a waiver is a voluntary and intentional relinquishment of a known right or benefit. *See Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 219 S.E.2d 190, 195 (1975). The waiver must be intentional. *See Lewis v. Lewis Nursery, Inc.*, 80 N.C.App. 246, 342 S.E.2d 45, 48, *review denied*, 317 N.C. 704, 347 S.E.2d 43 (1986). A person may waive practically any right he has unless forbidden by law or public policy. *See Clement v. Clement*, 230 N.C. 636, 639, 55 S.E.2d

459 (1949). The right to be waived may be procedural or substantive. *Id.*

■ A waiver is contractual in nature, and its scope and extent is determined from its purpose, subject matter, and language. *Cf. Econo–Travel Motor Hotel Corp. v. Taylor*, 45 N.C.App. 229, 262 S.E.2d 869, 873, *rev'd on other grounds*, 301 N.C. 200, 271 S.E.2d 54 (1980). Generally, the same type of consideration needed for a valid contract is also required for a valid waiver. *See Clement*, 230 N.C. at 640, 55 S.E.2d 459. Whether a valid waiver is entered into by parties is usually a question of whether a party knowingly intended to relinquish a right. *See Adder*, 219 S.E.2d at 195. However, the party may not plead willful ignorance and escape the waiver. *See Fairchild Realty Co. v. Spiegel, Inc.*, 246 N.C. 458, 98 S.E.2d 871, 877 (1957).

■ Any ambiguity in a written waiver will be construed against the drafting party. *See Federal Land Bank of Columbia v. Lieben*, 89 N.C.App. 395, 366 S.E.2d 592, 595, *aff'd*, 323 N.C. 471, 373 S.E.2d 439 (1988). If the language of the agreement creating the waiver is clear and unambiguous, construction of the contract is a matter of law for the court. *See Hagler v. Hagler*, 319 N.C. 287, 354 S.E.2d 228, 234 (1987). Consistent with the well-settled principal of contract construction, it will be presumed the parties intended what the language used clearly expresses, and the waiver must be construed to mean what on its face it purports to mean. *Id.*

In response to Plaintiff's argument that Defendants have waived their right to raise defenses, counterclaims, and setoffs, Defendants contend that the language of paragraph 8 falls short of the requirement

---

1. The parties have referred to the eighth paragraph of the Extension Agreement as a waiver. However, the Court believes that the paragraph could also be fairly characterized as a release. A release has been defined as the giving up or abandoning of a claim or right to the person against whom the claim exists or the right is to be exercised. *See Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 219 S.E.2d 190, 195 (1975). In any event, the Court does not believe that characterization of the provision as a release or waiver is important. As the court in *Adder*

stated, "Whether this agreement be called a release, a waiver or be given some other designation is not important to our decision." The Court in *Adder* found that the agreement in question was "a contract and is therefore subject to the recognized rules of construction of contracts". *Id.* 219 S.E.2d at 196.

Although the Court will hereinafter refer to paragraph 8 as a waiver provision, the Court believes that the law of release is equally applicable to the resolution of this issue.

that a waiver be manifested in an unequivocal manner. Moreover, Defendants claim that paragraph 8 failed to alert Defendants that they had waived the defense and counterclaim regarding Plaintiff's supposed negligent disbursement of funds to Maddalon without inspecting the construction site and receiving hard invoice copies.

The Court finds Defendants' contention lacks merit. The North Carolina Supreme Court has addressed the issue of waiver in a case similar to the one at hand involving the interpretation of a promissory note. *See Adder*, 219 S.E.2d at 195. In that case, the Plaintiff took his car to the Defendant for repairs. The Plaintiff then paid for the repairs with a bad check. After driving the car for several days, the engine exploded. The Plaintiff returned the car to the Defendant who repaired the engine but refused to return the car until the Plaintiff paid the first and second repair bill. The Plaintiff then signed a promissory note containing the following language:

> This will acknowledge my indebtedness of $1,538.03 representing the balance due for labor and parts to finish my drag race car and that *I have no defenses or set-offs against such indebtedness grounded upon poor workmanship or other objection....* I further agree that in the event that you should undertake suit against me on the note, *I will not plead any defenses against payment of same* (emphasis added). *Id.* at 193.

Thereafter, the Plaintiff brought an action against the Defendant alleging negligence and breach of implied warranty.

The Defendant answered and counterclaimed for recovery on the note. Based on the waiver, the trial court dismissed the Plaintiff's complaint and entered summary judgment in favor of the Defendant on the note. The Court of Appeals reversed finding that the release was obtained by duress. *Id.* at 195.

In reviewing the Court of Appeals ruling concerning the Defendants' counterclaim on the note, the North Carolina Supreme Court reversed and found that the trial court was correct in granting summary judgment on the counterclaim. *Id.* at 195.[2] The court emphasized that the Plaintiff knew what he was doing when he signed the note. *Id.* The parties intended to voluntarily adjust the dispute through utilizing a waiver. *Id.* Courts should encourage the voluntary resolution of conflicts because the law favors such agreements. *Cf. Hagler*, 354 S.E.2d at 235. When a clear intent to waive rights is demonstrated in order to resolve a conflict, the North Carolina Supreme Court has indicated it will enforce the agreement. *Id.*

■ In this case, the Court believes summary judgment is appropriate. The clear language of the Extension Agreement provides that Defendants have waived or released any defenses, counterclaims, or setoffs they may have against Plaintiff in connection with the loan agreement. It is also evident to the Court that the waiver was exchanged for valuable consideration in that Defendants received an

---

**2.** The Supreme Court modified the Court of Appeal ruling concerning Plaintiff's complaint. The Supreme Court found that the waiver only applied to the note and not Plaintiff's negligence and warranty claims. The court found the language of the waiver to be ambiguous concerning those claims.

The Court believes that dissenting Chief Justice Sharp in *Adder* makes a good point when she states that the Plaintiff "also renounced his claims against negligence and breach of warranty" when at trial the Plaintiff indicated that he "wouldn't hold them responsible for anything". *Id.* at 197–98. Regardless of the Court's belief that the dissent in *Adder* is better thought out, the Court believes that the waiver in the case currently before it is distinguishable from the language of the waiver in *Adder*. The language

from the waiver in *Adder* provided that the Plaintiff had "no defenses or set-offs against such indebtedness *grounded* upon poor workmanship or other objections". *Id.* at 196. Therefore, the waiver only applied to defenses based on poor workmanship and not defenses based on negligence or breach of warranty. In the case at hand, the waiver clearly states that Defendants "have *no* defenses of *any* kind or nature whatsoever nor *any* setoffs or other counterclaims against Lender in connection with this loan transaction".

It is evident to the Court that the waiver in this case is substantially more comprehensive than the waiver in *Adder*. In exchange for an extension, Defendants in this case intended to waive *any* defenses, counterclaims, or setoffs in connection with the loan agreement.

extension of the note's maturity date. Because the language of the waiver is unambiguous and supported by valuable consideration, the Court believes no genuine issue of material fact is in dispute regarding Defendants' waiver of defenses, counterclaims, or setoffs against Plaintiff.

Defendants have failed to counter the affidavit of Plaintiff's First Vice President, J. Ronny Hudspeth, concerning damages. Accordingly, the Court will award to Plaintiff the amount of $853,914.00, representing the outstanding principal on the note, and interest to be calculated as provided in the note. Furthermore, the note, without specifying a particular percentage of the outstanding balance, provides that Plaintiff is entitled to recover reasonable attorney's fees. Pursuant to N.C.Gen.Stat. § 6–21.-2(2), Plaintiff is therefore entitled to attorney's fees in the amount of 15% of the principal plus interest.

NOW, THEREFORE, IT IS ORDERED that Plaintiff's renewed motion for summary judgment be, and hereby is, GRANTED.

### JUDGMENT

In accordance with the Memorandum of Decision and Order entered simultaneously with this Judgment,

IT IS ORDERED, ADJUDGED AND DECREED that:

(1) Plaintiff's renewed motion for summary judgment be, and hereby is, GRANTED;

(2) Defendants' counterclaims and defenses are dismissed;

(3) Plaintiff is awarded the amount of $853,914.00, representing the outstanding principal on the note, and interest to be calculated as provided in the note; and

(4) Plaintiff is awarded attorney's fees in the amount of 15% of the principal plus interest as provided at N.C.Gen. Stat. § 6–21.2(2).

This the 8th day of July, 1991.